JOHN F. BALDWIN & another, executors, *vs.* ARTEMAS PARKER
& others.

On the separate and distinct issue whether the execution of a will was procured by undue influence, the burden of proving undue influence is upon the party alleging it.

A will made in favor of the testator's second wife and her children was contested, upon the grounds of undue influence and of insanity, by the children of the first wife, who introduced evidence of the amount of his property at the time of the second marriage, and of harsh treatment of themselves by the second wife. She, being called as a witness, and asked to state in reply, as nearly as she could, the amount of the testator's property at the time of their marriage; and whether he was then much in debt; and, if so, to what amount; answered that she could not tell exactly, but did not think that, if his debts had been paid, his property would have amounted to a sum which she named, nor to half of it; that he was much in debt, but she could not tell how much. Being also asked how she treated her step-children, whether kindly or otherwise; and whether she

failed in her duty to them as a mother; and, if so, in what respect; she answered that she treated them as kindly as if they had been her own children, and had nothing in her heart but to bring them up the best way, and did not think of any way in which she failed except in doing too much for them. No specific objection having been made to that portion of the second answer in which the witness stated what she had in her heart, *Held*, that no exception lay to the admission of these questions and answers.

A witness being asked, on cross-examination, whether at a certain date he had heard any-thing on a certain subject in a family of which he and his wife were members, the party proposing the question stated that he did not wish the witness, in answering, to name the conversation in which, nor the person from whom, he had so heard. The other party objected to the form of the question so far as it related to information derived by the wit-ness from private conversations with his wife, unless he should be allowed to state the details of the conversation. The judge ruled that the witness could not testify to private conversations between himself and his wife, and that the question should be modified so as either to exclude information so derived, or not to confine the source of information to that family. *Held*, that there was no ground of exception to this ruling.

APPEAL by Artemas Parker, Stephen Taylor and his wife Emmeline, and the minor children of Frederick Parker, from a decree of the judge of probate, allowing as the last will of Jonas Parker, of Carlisle, who died June 2, 1866, an instrument executed May 17, 1866, which disposed of the bulk of the tes-tator's estate to his second wife and her children.

At the hearing, before *Gray*, J., the formal execution and at-testation of this instrument were proved; and a trial by jury was had upon two issues : 1. Whether the testator at the time of the execution was of sound and disposing mind. 2. Whether the execution was procured by the undue influence of Anna Parker, John Gleason, Joanna Gleason and John F. Baldwin, or some of them. It appeared in evidence that Jonas Parker was twice married, the first time in 1809 and the second in 1818; that the appellants Artemas and Emmeline, together with Frederick and Jonas, who died before him, were his children by his first wife, who died in 1817; and that Joanna, wife of John Gleason, and Fanny, wife of John F. Baldwin, were his children by his sec-ond wife, Anna Parker, who survived him.

The appellants contended that the burden of proof was upon the executors on both issues; the judge ruled that the burden of proving the sanity of the testator was upon the executors, but the burden of proving undue influence was upon the appellants and to this ruling the appellants alleged exceptions.

The appellants were allowed, against the objection of the ap

pellees, to introduce evidence to show that the second wife, fiom the time of her marriage, treated the children of the first wife harshly, and overworked them to the injury of their health, and influenced and controlled her husband in the management of his affairs. Evidence was also introduced by them, without objection, as to the amount of the testator's property at the times of his second marriage and of his last sickness. The appellees were afterwards allowed, against the objection of the appellants, to give in evidence the following interrogatories and answers in the deposition of the second wife, although these interrogatories had been objected to by the appellants before answer at the taking of the deposition.

*Int.* "About what amount of property had Mr. Parker at the time of your marriage? State as nearly as you can. Was Mr. Parker much in debt at the time of your marriage? If so, state about how much he owed?" *Ans.* "I could not tell exactly. I don't think it would amount to five hundred dollars, or half of it. If his debts were paid, I don't think it would. He was much in debt. I could not tell how much, so many debts came in."

*Int.* "How did you treat Emmeline, Frederick and Artemas, whether kindly or otherwise? State if you failed in your duty to them as a mother in any respect. State wherein and in what manner." *Ans.* "I treated them as kindly as if they had been my own children, and had nothing else in my heart but to bring them up the best way they could be. I don't think of any way in which I failed, except it was in doing too much for them."

To the admission of this portion of the deposition the appellants alleged exceptions.

It appeared in evidence that the testator's family at the time of his last sickness consisted of his wife, John Gleason, and Mrs. Gleason; that John Gleason went to New Hampshire on May 11; returned on May 13; and on May 14 went with John F. Baldwin to Chelmsford with an order written in the testator's name by Mrs. Gleason, to obtain a former will of the testator from a person with whom he had deposited it; but it was in controversy whether or not they went for the will, or she wrote

the order, by direction of the testator. Upon cross-examination of John Gleason, the appellants proposed to ask him, " Had you heard, before you went up country on the 11th of May anything in the family upon the subject of the testator's having made a former will, or upon the subject of his making a new will ? " And the said at the same time that they did not wish the witness to state the conversation in which, nor the name of the person from whom, he received the information. The appellees objected to this question, so far as it related to information derived by the witness from private conversations with his wife, unless he should be allowed also to state the details of the conversation. The judge ruled that the witness could not testify to private conversations between himself and his wife; and that either the question should be so modified as to exclude information received in such conversations, or else so as to ask the witness whether he had heard anything, before the time specified, upon the subject, without confining it to what he had heard in the family. The appellants declined to modify the question; and excepted to its exclusion in the form in which they had put it.

The jury returned a verdict for the appellees upon both issues; and the judge reported the case for the determination of the full court, such order and decree to be made therein as law and justice might require.

*D. S. Richardson & T. H. Sweetser,* for the appellants.

*B. F. Butler & W. P. Webster,* for the appellees.

HOAR, J. We do not find any valid objection to the admission or rejection of evidence at the trial, which would furnish a reason for setting aside the verdict.

The questions to Mrs. Parker in relation to the amount of her husband's property, and his debts, did not ask for opinions, but facts; of which she had means of knowledge. Her answer was a statement of facts, not made with precision and accuracy, and undoubtedly to some extent a matter of estimate; but still it was testimony upon facts. There was no suggestion that his property was of such a kind that she would not know its value Questions as to quantity, distance or size, where there has been

Baldwin & another, executors, *v.* Parker & others.

no measurement, always involve an estimate, and to that extent an opinion; but there is no legal objection to asking a witness who is acquainted with the position of two objects, how far one is from the other, or to his answering that it is about half a mile, because he has never measured the distance.

So the question as to her treatment of the children, though general in its form, and calling for an answer equally general, was unobjectionable. Either party could have inquired for the particulars more fully, if they had chosen to do so. Whether she treated the children well and kindly was a fact within her knowledge, and no more a matter of opinion than most of the common facts in human experience. It is not easy to see how the fact could have been proved otherwise, without a detailed narrative of everything she had ever said or done to them, in the whole course of their lives, in order that the jury might judge of the kindness of each act and word. This would be absurd. The substance of her testimony was only to deny, in a general form, any acts of unkindness. The part of her answer which stated that she " had nothing else in her heart but to bring them up in the best way" perhaps should have been excluded, if a specific objection had been made to it, because she was to testify to acts and not to thoughts and purposes. But we do not see that it materially added to the evidence which was competent, and no distinction was made in the general objection to her whole answer.

The exception to the ruling upon the form of question to be put to John Gleason on cross-examination does not seem to be substantial. If the purpose of the question was merely to show that Gleason was acquainted with a certain fact at a particular time, in order to explain his conduct, or to affect the inferences to be drawn from it, then it was sufficient to show that he had been informed of the fact, and was not material to inquire whether the information came from one person or another. But if the purpose was to prove something relating to the person who gave the information, it would be open to the other party to inquire just what was said. If the information was given by his wife, and in a private conversation which the statute pro-

ibits to be used in evidence, either the fact that she gave him the specific information must be excluded on that ground; or if that objection to her testimony were waived or overruled, (which we do not intend to imply would be allowed,) the particulars of the conversation would be open to examination, as in the case of any other witness. In either view, therefore, there is no ground of exception to the limitation upon the question impose by the court.

The other question reserved upon the report is of more difficulty and importance. It is the question, Upon whom is the burden of proof upon the issue of undue influence? The claim on the part of the appellants is, that the party propounding the will is bound to prove that it is the will of the testator, and not of some other person operating upon and through him. On the other hand, the executors contend that when the execution of the instrument and testamentary capacity are established, nothing more is required by law to be shown affirmatively; and that, to avoid an instrument for fraud or duress, they must be proved by him who alleges them. In support of the former view it is argued that the issue upon the probate of a will is substantially a single one, to prove that the instrument was freely executed, according to the forms required by law, by a testator of sound mind; and that, whatever presumptions may exist upon any part of this issue, the burden of proof does not shift.

The question is certainly not without difficulty, and the authorities upon it are very conflicting. It is settled in this Commonwealth that on the issue of sanity or testamentary capacity the burden of proof is upon the party that offers the will for probate; and that the presumption of sanity does not shift the burden upon the opposing party. *Crowninshield* v. *Crowninshield*, 2 Gray, 524. *Baxter* v. *Abbott*, 7 Gray, 72. The burden is undoubtedly on the same side to prove the formal execution of the instrument, and that the testator executed it as and for his last will.

The objection to a will that it was obtained by undue influence is not one which it is easy to define with precision. The

term seems to include both fraud and coercion. Sir John Nicholl defines it to be that degree of influence which takes away from the testator his free agency; such as he is too weak to resist; such as will render the act no longer that of a capable testator. *Kinleside* v. *Harrison*, 2 Phillim. 551. Where influence has been exerted upon a person of feeble mind, or whose faculties are impaired by age or disease, it is not always easy to draw the line between the issues of sanity and of undue influence. So it is possible that in many cases the coercion might be such as to be available to set aside the will on the ground that it had not been executed by the testator.

But where the issue of undue influence is a separate and distinct issue, involving proof that the testator, though of sound mind, and intending that the instrument, which he executes with all the legal formalities, shall take effect as his will, was induced to execute it by the controlling power of another, we think the weight of authority and the best reason are in favor of imposing upon the party who alleges the undue influence the burden of proving it. And we are inclined to think that this has been the general practice in this Commonwealth. *Glover* v. *Hayden*, 4 Cush. 580.

The most recent decision in the court of appeals in the state of New York upon the question is to the same effect. *Tyler* v. *Gardiner*, 35 N. Y. 559. All the judges concurred upon this point, though they differed upon others arising in the case.

The decision in *Crowninshield* v. *Crowninshield*, and in *Baxter* v. *Abbott*, *ubi supra*, that the burden of proof is upon the party propounding the will to establish the sanity of the testator, although the presumption of law is in favor of sanity, is placed very much upon the construction of the statute of wills, which makes the sanity of the testator a condition precedent to his power to make a will. But when all is proved that the statute requires; when a testator of sound mind has intentionally made and published a will according to the forms of law, his will is as much a legal conveyance and disposition of his property as any other lawful instrument of conveyance. It may be impeached or made invalid by proof of fraud, duress,

or undue influence, which have caused it to contain provis
ions which he has been wrongfully induced to insert in it; but
so may a deed or other contract be impeached for the like
reason.

The defence of duress or fraud, when made in avoidance of a
deed, is required to be specially pleaded, and is not good under
the issue of *non est factum.* The reason seems to be, that the
instrument is voidable, and not void ; it is the deed of the maker
of it; and, if he would avoid it, he is called upon to prove the
existence of facts which will authorize him to do so. Yet the
issue of fraud or duress involves the question whether the deed
was ever obligatory, as much as the same issue does the original
validity of a will. It is true that the distinction between a
voidable and void act has no precise application to a will; be-
cause a will is in its nature revocable, and may be set aside by
a testator at his pleasure. But the question whether a will is his
free act, the product of his own volition and not of another's, is
essentially the same as in the case of a contract; and there is
no positive statute rule to make a difference in this respect.

It was said by Baron Parke in *Barry* v. *Butlin,* 1 Curteis, 638,
and the observation was quoted with approbation by Mr. Justice
Thomas in *Crowninshield* v. *Crowninshield,* " that the *onus pro-
bandi* lies in every case upon the party propounding a will ; and
he must satisfy the conscience of the court that the instrument
so propounded is the last will of a free and capable testator."
This statement, though apparently supporting the doctrine that
the burden of proof on the issue of undue influence is on
the party propounding the will, we do not feel sure was so
intended.

The case was tried upon an allegation by the executors pro-
pounding the will, and upon allegations of the heir setting up
that it was obtained by undue influence. The question dis-
cussed by Baron Parke upon the burden of proof was upon the
point, whether, if it appeared that the will was prepared by a
person who took a benefit under it, it made a presumption and
*onus probandi* against the will, and required proof that the con-
tents of the will were known to the testator.

Baldwin & another, executors, *v.* Parker & others.

He says : " If it is intended to be stated, as a rule of law, that in every case in which the party preparing the will derives a benefit under it, the *onus probandi* is shifted, and that not only a certain measure, but a particular species of proof is therefore required from the party propounding the will, we feel bound to say that we conceive the doctrine to be incorrect. The strict meaning of the term *onus probandi* is this, that if no evidence is given by the party on whom the burden is cast the issue must be found against him." " In all cases this *onus* is imposed on the party propounding a will; it is in general discharged by proof of capacity and fact of execution ; from which the knowledge of and assent to the contents of the instrument are assumed, and it cannot be that the simple fact of the party who prepared the will being himself a legatee is in every case and under all circumstances to create a contrary presumption, and to call on the court to pronounce against the will unless additional evidence is produced to prove the knowledge of its contents by the deceased."

He concludes that it amounts only to a circumstance of suspicion, calling for care in the court, and calling on it not to grant probate without entire satisfaction that the instrument does express the real intentions of the deceased.

The whole result of the reasoning would seem to be, that upon the separate issue of undue influence the burden of proof is upon the party alleging it; and that it does not shift upon the party having the general burden of establishing the will, upon the mere introduction of evidence of a single circumstance of suspicion. If no evidence were offered on either side, the allegation of undue influence would fail. In the language of Chief Justice Mellen, " the law requires proof of facts; especially when the object is to destroy and set aside an act apparently deliberate, and executed with all usual and legal formalties." *Small* v. *Small,* 4 Greenl. 224. The view which we have taken of the English doctrine on the subject is confirmed by a recent decision in the house of lords, *Boyse* v. *Rossborough,* 6 H. L. Cas. 2. In that case, p. 49, Lord Cranworth says : " One point, however, is beyond dispute, and that is, that where

once it has been proved that a will has been executed with due solemnities by a person of competent understanding, and apparently a free agent, the burden of proving that it was executed under undue influence is on the party who alleges it. Undue influence cannot be presumed."

The rule which was adopted at the trial seems therefore to us to be correct in principle, and supported by authority, as well as obviously the most convenient in practice; and none of the objections to the probate of the will can be supported

*Judgment on the verdict.*