HARVEY BARNES, appel't from the decree of the judge of probate,
*vs.*
SARAH R. BARNES, executrix of the will of Amos Barnes.

Knox, 1874.—January 8, 1876.

*Will.*

The burden of proof is upon the proponent to show that the will in controversy has been duly signed, executed and published by the party whose will it purports to be, and that he was of a sound and disposing mind.

A proper attestation clause showing that all the statute formalities have been complied with, is presumptive evidence of the valid execution of a will, and in the absence of proof to the contrary is conclusive.

It is admissible for an attesting witness to a will to state what was his usual course of business in such a case, when the particulars of the transaction are not distinctly remembered.

To prove a testator to have been of sound mind, it is sufficient to prove that he was in the possession of mental faculties sufficient for the transaction of ordinary business, and with an intelligent understanding of his own acts.

To render a will invalid, as having been executed under undue influence, it must be shown that the influence amounted either to deception, or to force and coercion, destroying free agency.

The influence of kindness and affection is not undue.

When a case is heard on appeal, the appellant is limited to the reasons of appeal assigned by him.

One of the reasons of appeal was: "Because in the making and execution of said instrument, the said Amos Barnes was influenced by an unfounded and unreasonable prejudice against his own children and heirs-at-law." *Held,* that under this "reason of appeal," the question of insane delusion of the testator in regard to his children, was not open to the appellant; that prejudice was not insane delusion.

On exceptions.

An appeal from the decree of the judge of probate, approving a will of the following tenor :

"I, Amos Barnes, of Camden, in the county of Knox, and state of Maine, knowing the uncertainty of life, and being desirous of controlling the distribution of my property, do make, publish and declare the following, as my last will and testament:

First. I give and bequeath to my wife, Sarah R. Barnes, and to Fanny Thompson, daughter of Marcus Thompson, to hold undivided and jointly, all my real estate, consisting of my homestead in said Camden, containing three acres more or less, with all the buildings thereon ; also a wood lot situated in said Camden, containing fifty acres more or less.

Secondly. I give and bequeath to my said wife and Fanny Thompson, jointly and undivided, all my personal estate of every name, description, and nature, consisting of household furniture, horse, horse wagons, sleigh, sled, and all the implements of farming and husbandry ; also all my goods remaining in my store, and all notes and accounts due me, to have and to hold, to them, and their heirs and assigns forever ; they paying to my children hereafter named, in one year after my decease, the sums following, to wit : To my daughter, Abigail Tolman, the sum of two dollars ; to my son, Amos Barnes, jr., the sum of two dollars ; to my daughter, Chloe Thorndike, the sum of two dollars ; to my daughter, Mary Oxton, the sum of two dollars ; to my daughter, Harriet Lowy, the sum of two dollars ; and to my son, Harvey Barnes, the sum of two dollars ; and they, the said Sarah R. Barnes and Fanny Thompson, pay all my just debts, funeral charges, and expenses of the probate of this my last will and testament.

Lastly. I do constitute and appoint my said wife, Sarah R. Barnes, sole executor of this my last will and testament.

In testimony whereof, I have hereunto set my hand and seal, this 27th day of April, in the year of our Lord one thousand eight hundred and sixty.                    Amos Barnes." (Seal.)

Signed and sealed by the said Amos Barnes, and by him declared to be his last will and testament, in our presence ; and we each

of us in his presence, and the presence of each other, and the same time subscribed our names as witnesses.     Nathaniel Meservey,

T. W. Chadbourn,<br>Charles A. Miller.

On due notice and hearing had before the probate court, held at Rockland, at its October term, 1868, it was "ordered by said court, that said instrument, proved as aforesaid, be approved, allowed, and recorded, as the last will and testament of said deceased."

From this decree an appeal was taken to this court, where on the hearing at *nisi prius,* several pleas were filed by the appellant, and joined by the appellee, the last of which was in the form following :

And for further plea the said appellant comes and says, that at the time of the signing of said instrument, and the supposed making and execution thereof, the said Amos Barnes was influenced thereto by insane delusion respecting his children, and their conduct towards him, and a groundless belief that they had done him some harm, and behaved undutifully towards him.   And of this puts himself on the country.

After a long trial, the report of which is voluminous, the jury returned affirmative findings to the following questions :

I. Was the said supposed writing or will signed by said Amos Barnes, or by some person for him at his request, and in his presence, and was it subsequently subscribed in his presence by three credible attesting witnesses.

II. Was the said instrument duly executed and published by said Amos Barnes, as his will.

III. Was the said Amos Barnes of sound mind, at the time of the supposed execution of said instrument.

IV. Was the execution of said instrument the free, voluntary and unrestrained act and will of said Barnes, uncontrolled by other persons or influences.

The jury returned negative findings to the following questions :

V. Was the said Amos Barnes at the time of signing said instrument, and the supposed making and execution thereof, unduly influenced thereto by Sarah R. Barnes or any other person.

VI. Was the said Amos Barnes at the time of the signing and supposed execution of said instrument, influenced thereto by an unfounded and unreasonable prejudice against his own children and heirs-at-law.

VII. Was the said Amos Barnes at the time of the signing of said instrument, and the supposed making and execution thereof, influenced thereto by insane delusion respecting his children and their conduct towards him, and a groundless belief that they had done him some harm, and behaved undutifully towards him.

The appellant filed exceptions, among others, to the refusal of the presiding justice to give the following requested instructions :

III. That the mind of said Barnes was not sound, if he was under the influence of a delusion in respect to the character and conduct of his children, which influenced and controlled him in the disposition of his property by his will.

IV. That a delusion is a diseased state of the mind or affections, in which persons believe things to exist, which exist only, or in the degree they are conceived of, only, in their own imagination, with a persuasion so fixed and firm, that they act upon such delusion as though it were a fact.

V. That even if said Barnes at the time of the execution of said instrument had sufficient capacity, memory and sense to know and comprehend, and transact ordinary business transactions, yet in regard to his children, was subject to the delusion that they had unnecessarily and unjustly caused him to be put under guardianship, and taken the control of his property from him, when such was not the fact, and the guardianship was necessary, and if proper, and the children behaved in a dutiful or proper manner, in causing it to be imposed upon him, and the provisions of his will were affected by this delusion, he is not to be considered as of sound mind, when he signed or executed it.

And if such delusion existed as to any one of his daughters, who favored his discharge from guardianship at his request, and he acted upon it, the will is equally void as if the delusion existed as to all his children.

VI. That the burden of proof is upon the appellee, to show that said Barnes was at the time of the execution of said instru-

ment of sound mind ; and that the burden does not shift in the progress of the trial, but continues upon her to the end ; and that if upon the whole evidence it is left uncertain whether said Barnes was of sound mind, and free from delusion affecting the provisions of his will, the instrument is not to be considered his will.

IX. That if the jury consider the provisions of the will to be unjust and unnatural, and that there is no sufficient reason shown why he should give the whole of his property to his wife and her grand-daughter, (except the nominal sums mentioned in the will,) to the exclusion of his own children, and especially his daughter, Mary, they are at liberty to infer from these facts, that the said Barnes labored under some unsoundness of mind, or was under some undue influence in making his will.

X. That if the jury are satisfied that the mind of said Barnes, at the time of the execution of said instrument, was in a weak and enfeebled condition, and the provisions of said instrument were induced partially by the weakness of his mind, partially by the improper influence of his wife, and partially by a groundless prejudice against his children, and that these combined influences induced him to make the instrument as he did, it cannot be considered his will.

Other exceptions, with a statement of the case, appear in the opinion.

*A. P. Gould & J. E. Moore,* for the appellant, contended, 1. That there was no sufficient proof of the due execution of the will. 2. That the presiding justice mistook the law in respect to the burden of proof on the subject of mental unsoundness. 3. That the ninth requested instruction should have been given. 4. That legal testimony was rejected, and illegal testimony admitted. 5. Expert testimony was improperly rejected. 6. Illegal testimony was admitted for the appellee. 7. There was error in the admission of portions of depositions.

On the second point, the counsel argued as follows :

The fourth reason of appeal was, that the testator was not of sound mind at the time of the execution of this instrument.

In this state the burden of proof is on the party seeking to set up a will, to prove the mental competency of the testator ; and this burden continues on him throughout the trial.

It is only "a person of sound mind" who can make a will in this state. To set up a will, the supposed testator must be proved to have been such a person. R. S., c. 74, § 1. *Cilley* v. *Cilley*, 34 Maine, 162. *Gerrish* v. *Nason*, 22 Maine, 438.

In *Crowninshield* v. *Crowninshield*, 2 Gray, 524, 534, it is said : "The burden does not shift during the progress of the trial, but continues throughout upon the appellee ; and if, upon the whole evidence, it is left uncertain whether the testator was of sound mind or not, the will cannot be proved."

The particular form of mental unsoundness which existed in this case, was the delusion of the testator in respect to the character and conduct of his children ; under the influence of which he disinherited them, and gave one-half his property to his second wife, and the other half to the child of one of her illegitimate children.

Delusion is insanity. If the testator acted under such delusion in respect to his children, his mind was not "sound," in the sense of the statute.

For definitions of insanity and unsoundness of mind, see Bouv. Law Dict. ; Delusion ; 1 Red. on Wills, c. 3, pp. 71, 72, 78, and notes ; *Drew* v. *Clark*, 1 Add. 279 ; 2 id. 102 ; 3 id. 79 ; where it is said "that the true criterion, or test of the presence of insanty, is delusion." *Commonwealth* v. *Rogers*, 7 Met. 500, 502. Elwell on Malpractice & Med. Ev., pp. 389, 390. See especially, 1 Red. on Wills, pp. 76–77, where it is said, "the true criterion is where there is delusion of mind there is insanity ; that is, when persons believe things to exist, which only exist, or at least, in that degree exist only, in their own imagination, and of the non-existence of which neither argument nor proof can convince them that they are of unsound mind."

A very common form of delusion is in respect to the character and conduct, and fidelity of one's own children and relatives.

Numerous reported cases illustrate this. See 1 Red., p. 82.

If the provisions of a will are influenced by such delusion, and children are disinherited in consequence of it, the will should be set aside. *Seaman's Friend Society*, v. *Hopper*, 33 N. Y. 619. *Townsend* v. *Townsend*, 17 Gill, 10. *Jenks* v. *Smithfield*, 2

R. I. 255.  *Morris* v. *Stokes,* 21 Geo. 552.  *Potts* v. *House,* 6 Geo. 324.  *Lucas* v. *Parsons,* 24 Geo. 640.  *Seaman's Friend Society* v. *Hopper,* 43 Barb. 625.  Taylor's Med. Juris, (6 Amer. ed.) pp. 631, 673.  *Florey* v. *Florey,* 24 Ala. 241.  Shelford on Insanity, p. 41.

All these cases are illustrations of a diseased state of the mind, respecting one's children and relatives; and it is invariably pronounced, that when the testator is unduly influenced by prejudice, delusion, or an unnatural and untrue conviction of the character and conduct of his children, to disinherit them, the will should be set aside.

The burden was upon the appellee to prove that the mind of this testator was free from such delusions, otherwise his mind was not sound in the sense of the statute.  His mental soundness was put in issue by the reasons of appeal and by the pleadings.

When it was suggested by the appellant that he labored under this particular form of insanity, or unsoundness of mind, this delusion in respect to his children, and unfounded prejudice against them, and that this was the reason of their being disinherited, and of the giving of his property to a stranger; it was the duty of the appellee to overcome this suggestion, and the evidence introduced to support it; the burden still being upon him to prove that no such delusion existed.

The presiding judge seemed to labor under the impression, that when the appellee had made out a *prima facie* case of mental soundness, if the appellant contended that there was unsoundness in a particular form, such as delusion or topical insanity, relating to the character and conduct of his children, the burden was upon the appellant to establish this proposition.  This was clearly a mistake.

To present his views more definitely on this subject.  The appellant presented the 5th and 6th requests.

The 5th request was given, but the 6th request which was that the burden was still upon the appellee, was denied, and the judge instructed the jury in respect to the 5th, thus:—"Gentlemen, I give you this instruction as a matter of law, leaving you to consider whether or not there was any delusion.  And I also instruct you that those who assert the delusion are bound to establish it."

This was the vital question in the case ; and the instruction was therefore of the greatest importance. It cast the burden upon the appellant to prove that the mind of the testator was unsound. And we have shown that this is not the rule of law in this state.

The requests for instructions upon the question of mental soundness should all have been given. They are the third, fourth, fifth, sixth, and tenth of the first series.

They were not given in the general charge, and the charge is, in many respects inconsistent with them.

The judge correctly instructed the jury, that if the testator labored under any undue influence or prejudice against his relatives, and "if he labored under an insane delusion which operated against those near and dear to him, . . . the will should be discarded ;" but he subsequently committed the error of instructing the jury, that the burden was upon the appellant, who asserted the existence of such a delusion to prove it.

*A. S. Rice & O. G. Hall*, for the appellee.

APPLETON, C. J.   This is an appeal from the decree of the judge of probate approving and allowing the will of Amos Barnes, and ordering the same to be recorded.

The case comes before us on a motion for a new trial, and on exceptions.

It appears from the evidence that the testator, prior to 1842, had become somewhat intemperate in his habits, and upon application duly made, was placed under guardianship, and his son Amos appointed his guardian; that he was indignant at this, as well as dissatisfied with the management of his estate by his guardian ; that in 1845 at the request of most of his children, he was discharged from guardianship, and became temperate in his habits ; that on July 24, 1848, his wife, the mother of the appellant and of his other children, six in all, died; that within a short time after her death and with discreditable haste, he married the appellee ; that this marriage gave great offense to his children ; that his will was made and signed April 27, 1860; that he died January 10, 1868, leaving some small parcels of real and his personal property to the appellee, and to her grand-daughter, the child of her illegitimate

daughter, and equal and nominal sums to his other children; that the whole estate would amount to some $1700, and that at the time of making his will, his children were all in comfortable circumstances, save perhaps one.

An appeal was taken by Harvey Barnes, and the following reasons asigned therefor :

I. "Because the said Amos Barnes did not sign or legally execute said instrument." On the trial it was not denied that the will was signed by him.

II. "Because said instrument was not executed in the presence of three disinterested witnesses." The disinterestedness of the witnesses was not denied.

III. "Because the persons who subscribed said instrument as witnesses, did not subscribe the same at the request of the said Amos Barnes, nor in his presence, nor in the presence of each other."

That the requirements of the statute in all these respects were fully complied with, was satisfactorily proved, and the facts were so found by the jury.

IV. "Because the said Amos Barnes at the time of the said supposed execution of said instrument, was not of sound mind."

The evidence shew the testator to be an eccentric man, addicted to talking to himself, making odd gestures, moody, of a quick temper, passionate; but from 1845 to 1860 he kept a small store, bought goods in Boston and Rockland, supported his family, and managed his own affairs without any interference from the appellant; who lived near, or from any of his children who lived in the neighborhood, and that his habits were temperate.

V. "Because the said Amos Barnes was unduly influenced by the said Sarah R. Barnes, and other persons, in the making and execution of said instrument."

Nothing is found in the evidence tending in the remotest decree, to show undue influence on the part of the appellee or any one else. So far as the evidence discloses, Mrs. Barnes did her duty to her husband, notwithstanding the ill omened auspices of the marriage, and was entitled to the influence, which kindness and attention to the wants of her husband, and care for her household, would naturally give. Nothing more is shown.

VI. "Because in the making and execution of said instrument, the said Amos Barnes was influenced by an unfounded and unreasonable prejudice against his own children and heirs-at-law."

From the time of the marriage of his father in 1848, to his death in 1868, though living near, the appellant never entered his father's house, until after his death to attend his funeral. One of his daughters on the eve of his death, visited her dying father. Another daughter was at his house three times during this period of twenty years, and all were most unfilially infrequent in their visits. Under such circumstances, the testator might have conceived a prejudice, but it is difficult to imagine it either unreasonable or unfounded.

The verdict, it is apparent, is in conformity with the evidence, and could not have been otherwise, without entirely disregarding its force and effect.

The case being heard upon appeal, the only questions open for consideration are those assigned in the reasons for appeal. The appellant is limited to those. *Gilman* v. *Gilman*, 53 Maine, 184. *Patrick* v. *Cowles*, 45 N. H. 553.

Numerous exceptions have been alleged to the rulings of the presiding justice, which will be considered in the order in which they were discussed by the learned counsel for the appellant in his able and exhaustive argument.

Exception is taken as to the ruling in relation to the due execution of the will.

The signature of the testator was not denied. That of the attesting witnesses was proved. One of the witnesses had deceased, the other two, one of whom was a lawyer, were residents of other states. The testator went to have his will made, and returned with it. His signature appears first on the will. Underneath is written "signed and sealed by the said Amos Barnes and by him declared to be his last will and testament in our presence, and we each of us in his presence, and in the presence of each other, and at the same time subscribed our names as witnesses." Then follow the signatures of the attesting witnesses.

T. W. Chadbourne, one of the attesting witnesses, testifies that he never signed a will unless it was in the presence of other subscrib-

ing witnesses, and of the testator, and at his request, and that he was satisfied this was no exception to his usual course, though he had no distinct recollection of the matter.

Upon this evidence, the presiding judge after stating the precise requirements of the statute, left it to the jury to determine from all the facts and circumstances, whether or not the will had been executed in accordance therewith.

Proof of the due execution of a will may be shown by direct evidence, or inferred from circumstances. *Gerrish* v. *Nason*, 22 Maine, 438. The attesting witnesses were dead or out of the state. When that is the case, proof of their handwriting is sufficient. *Nickerson* v. *Buck*, 12 Cush. 332, 344. *Ela* v. *Edwards*, 16 Gray, 91, 93. Every person making a will is presumed to have knowledge of its contents, and if it is alleged that he had not such knowledge, or that he was induced to execute it by misrepresentation, the *onus probandi* is with those who make the objection. *Pettes* v. *Bingham*, 10 N.H. 514. The will being duly executed the law presumes he did it understandingly. *Sechrest* v. *Edwards*, 4 Met. (Ky) 163. That the testator signed the will first is indicated by the will, and as is well remarked by Dewey, J., in *Dewey* v. *Dewey*, 1 Met. 349, 354. "It can hardly be supposed that the testator, who was by his own active agency procuring the authentication of the instrument by the requisite witnesses, would have omitted the first step necessary to its due execution, viz : the signature by himself."

Indeed a will may be admitted to probate though neither of the surviving attesting witnesses recollect the circumstances of its execution. *Eliot* v. *Eliot*, 10 Allen, 357.

It would be monstrous if a will was to be defeated because after a great lapse of time the witnesses may have forgotten the facts attending its execution. A proper attestation clause showing that all the statute formalities have been complied with, will, in the absence of proof to the contrary, be presumptive evidence of the fact, after the death of the attesting witnesses or their failure to recollect what took place at the execution of the will. *Chaffee* v. *Baptist Missionary Society*, 10 Paige, 85.

Here the attestation clause shew a full compliance with the requirements of the statute.

So far as the requests were in accordance with law, they were given in the charge. Those not given, it will be seen, were adverse to authorities cited, and the general principles of law. The facts disclosed abundantly justified the findings of the jury; and their force and effect were left to be determined by them in accordance with their good judgment.

Complaint is made that the charge in relation to the burden of proof was erroneous. On this branch of the case, the judge instructed the jury that a person of sound mind of the age of twenty-one years might dispose of his real and personal estate, by will, in writing signed by him, or by some person for him at his request, and subscribed in his presence by three credible attesting witnesses, not beneficially interested under the will; that the burden of proof was upon the party claiming that the will had been duly signed, executed and published by the party whose will it purports to be, and that the burden of proof was upon Mrs. Barnes to bring her case within the provisions of the statute of this state; and that the degree of intellectual vigor necessary to render a will valid, was the possession of mental capacity sufficient to transact business, and with an intelligent understanding of what he is doing.

It needs no citation of authorities to show that these instructions were sufficiently favorable to the appellant.

One of the reasons of appeal was that the will was the result of undue influence on the part of the wife. In reference to this, the instruction was that the influence must be of such a degree as to take away from the testator his free agency—such as he is too weak to resist—such as to render the act no longer that of a capable testator. A wife may influence her husband by kindness and affection, but the influence of kindness and affection will not defeat a will. If the wife by neatness, prudence and economy makes home more comfortable and her husband more happy, that is not such influence as will defeat a will.

These views are in strict accordance with the law as stated by Mellen, C. J., in *Small* v. *Small*, 4 Maine, 220. The influence must amount either to deception or else to force and coercion, in either case destroying free agency. *Gardner* v. *Gardner*, 22 Wend. 526. The party alleging fraud or undue influence has the

burden of proof upon him to show it.  *Baldwin* v. *Parker*, 99 Mass., 79.

Great stress has been laid by the counsel for the appellant upon the ruling of the presiding judge as to the law in relation to an insane delusion on the part of the testator in reference to his children ; but this question is not open to him.  The sixth reason of appeal contains only the allegation that the testator "was influenced by an unfounded and unreasonable prejudice against his own children and heirs-at-law."  Here is no assertion of the existence of any insane delusion on the part of the testator.  But prejudice is not insane delusion.  *Stackhouse* v. *Horton*, 15 N. J. Chancery Rep. 202.  When there are not only some plausible grounds for the opinion entertained by the testator, but much reason to doubt whether they are not entirely just and sound it would be absurd to pronounce them insane delusions.  Ib.  It hardly lies in the mouth of a son, who for twenty-three years, though living opposite, never entered his father's house, to allege prejudice on his part.  But whether there was prejudice or not, that is not insane delusion ; and the issue of such delusion cannot be raised under the sixth reason.  In probate appeals "the appellants," observes Morton, J., in *Boynton* v. *Dyer*, 18 Pick. 1, "are restricted to such points as are specified in their reasons of appeal."  To the same effect is the case of *Bean* v. *Burleigh*, 4 N. H. 550.  If then the question of insane delusion was raised by the counsel for the appellant without right or law, he cannot be permitted to take advantage of his own wrong nor can exceptions be sustained, even if the court, in its rulings as to a matter not legally before it, may have erred.

On the subject of delusion the court instructed the jury that the existence of a delusion does not necessarilly vitiate a will unless the delusion form the ground work of it, or unless decisive evidence be given that at the time of making the will the testator's mind was influenced by it.  The insane delusion must be one forming the ground work of his will and at the time he made it he must be acting under it.  These propositions are fully supported by all the authorities on the subject.

The counsel for the appellant requested the following instruc-

tion, "that even if said Barnes at the time of the execution of said instrument had sufficient capacity, memory and sense to know and comprehend and transact ordinary business transactions, yet in regard to his children was subject to the delusion that they had unnecessarily and unjustly caused him to be put under guardianship and taken the control of his property from him, when such was not the fact and the children behaved in a dutiful and proper manner in causing it to be imposed upon him, and the provision of his will was affected by this delusion, he is not to be considered as of sound mind when he signed and executed it, and if such delusion existed as to any one of his daughters who favored his discharge from guardianship at his request and he acted upon it, the will is equally void as if the delusion existed as to all his children."

The court gave this instruction leaving the jury to consider whether or not there was any delusion and instructing them that those who assert the delusion are bound to establish it.

It has already been shown that the question of delusion was not and could not be open to the appellant.

It may further be remarked that if there is no evidence upon which to base a request there can be no occasion for complaint for not giving it. A request must be good in its totality. Now it is difficult to see upon reading carefully the testimony that there is evidence of any delusion as to any one of his daughters or as to the other children in reference to their unfilial treatment.

Further, assuming the facts as stated in the request it would then be for the jury to determine whether he was to be considered of sound mind or not. The request is that the judge should rule peremptorily, thus withdrawing the decision from the tribunal to which it of right belonged.

It is apparent, therefore, that the request was one not pertinent to the questions involved in the reasons of appeal, that it was one which the appellant had no right to ask, nor no cause of complaint if not given; still less can he complain of it as given.

It must be borne in mind that the presiding judge had already instructed the jury that the burden of proof was upon the proponent to show the sanity of the testator. That instruction was neither modified nor withdrawn. It still remained in full force. The burden still remained upon the proponent. But was she

bound to go further? While she was bound to prove sanity, was she bound to negative insanity before and without proof of its existence? Assuredly not. "Every person is presumed to be of perfect mind and memory, unless the contrary be proved. . . . because where the contrary appeareth not, the law presumeth it— It need not be proved." Swinburn on Wills, 45 pt. 2, § 3, pl. 4. "It must be admitted, we think, upon careful examination of all the cases, that the burden of the proof of insanity, in the case of a will, equally with that of a deed or other contract, is upon the party alleging it, and who claims the benefit of the fact, when established." 1 Redfield on Wills, 16, (3 ed.,) 31. "It is, there-fore, proper to say," observes Bell, C. J., in *Perkins* v. *Perkins,* 39 N. H. 163, that the burden of proving the sanity of the testator and all the other requirements of the law to make a valid will, is upon the party who asserts its validity. This burden remains upon him till the close of the trial, though he need introduce no proof upon this point until something appears to the contrary."

"It is not improper to say that the burden of proving the insanity of the testator is on the party opposing the will. If he relies on that fact, he must, of course, lay evidence before the jury sufficient to out weigh the presumption of law and the proof on the other side and to convince the jury, or he must have a verdict against him. . . . But it is after all a question merely verbal; a question of the propriety of certain forms of expression; for we apprehend that whatever be the terms used, the course of practice is everywhere the same." In this case the general rule imposing the burden on the plaintiff was left unqualified.

Where life is involved, it was held to establish a defense on the ground of insanity, the burden is on the defendant to prove by a preponderance of evidence, that at the time of committing the act he was laboring under such defect of reason, from disease of the mind, as not to know the nature or quality of the act he was doing; or if he did, that he did not know he was doing what was wrong. While such is the law in a case of murder, it would seem that in the case of a will, the party alleging insanity should offer evidence tending to show that fact before the proponent should be called upon to negative its existence.

The ninth requested instruction was "that if the jury consider

the provisions of the will to be unjust and unnatural and there is no sufficient reason shown why he should give the whole of his property to his wife and her granddaughter (except the nominal sums mentioned in the will,) to the exclusion of his own children and especially his daughter Mary, they are at liberty to infer from the facts that the said Barnes labored under some unsoundness of mind or was under some undue influence in making the will."

This requested instruction was not given. This could not properly have been done. The jury were not to judge of the sufficiency of the reasons which induced the bequests in the will. Their sufficiency was for the testator. If of sane mind, it was for him to determine what he would do with his own, not for any jury. He was not to show the reasons why, among possible objects of his bounty, being sane, he preferred one rather than another and to give reasons for his so doing, nor was it incumbent upon the appellee so to do. There may be some unsoundness of mind on some subjects, that do not relate either to his property or to those who are the proper objects of his bounty, while as to other matters, his sanity is unquestioned. *Robinson* v. *Adams*, 62 Maine, 369. There may be some undue influence attempted, yet not sufficient to control the testator.

Henry Elwell was asked the question "State whether you have ever observed in Mr. Barnes any indications of any unsoundness of mind ?" to which he answered "I have not." It is objected that he was not an expert. But the materiality of the question vanishes when knowledge of the subject matter of inquiry is negatived by the witness.

Objections are taken to the exclusion of the following questions put to Jason Davis: "State whether he (Barnes) appeared to be rational at that time ? State about his appearance at that time ? State what acts you saw, if any, indicating "his mind was not sound ?"

But subsequently he was asked by the counsel for the appellant "if he saw any peculiar and unusual acts in him," and was directed to state what they were, which he did very fully. He was further directed to state any thing he saw him do or heard him say that struck him as peculiar or different from other people. The appellant has in this respect no cause of exception.

He was asked whether a great change came over him in his latter days. As the will was in 1860 and as the testator died in 1868 the change, whatever it was, occurring in his latter days could not be received to defeat a will made long before.

The witness was asked whether he observed him between 1854 and 1860 and if he observed any change in his appearance and conduct from what it was prior to his being put under guardianship? To this question an objection was interposed and it was excluded. The testator was put under guardianship in 1842 for intemperance. The witness had been fully inquired about as to the testator's conduct before that time and up to 1860. It was immaterial whether there was a change or not. The question was his mental soundness in 1860. All that was necessary to a full understanding of the case had been elicited, and there must be some limits to the examination of witnesses.

There was an offer made to prove that the testator made unusual noises in his store. The court ruled that he might answer the question if he knew he (Barnes) was there or if it was his voice; but as the witness did not know he was there and could not state that it was his voice, his account of the usual or unusual noises made by somebody, if made, were not admitted upon the question of the testator's sanity, nor should they have been.

The answer of Harvey that the testator "was incapable of doing business," whether admissible or not, was not stricken out and the appellant had the benefit of his testimony.

Otis Tolman, jr., was asked by the appellant after having stated that the testator was accustomed to talk to himself and to animals, the following question, "state whether or not his talk was incoherent?" This was excluded, but the court said "he may state, if he heard what was said, and any thing about it, and whether it had any meaning in it, if he heard it." To the question of the appellant's attorney "can you state whether it had any meaning or not?" the witness answered, "I would if I could recollect what he said."

In the examination of E. C. Long the presiding judge excluded an answer to this question "whether his condition attracted the general attention of the people." Whether it did or did not is immaterial, nor was the question proper.

The inquiry made of W. N. Thorndike whether he "appeared

to be capable of managing business during the last few years of his life" was not answered. The ruling on that subject was correct. It was not whether he appeared capable or not, but whether he was so capable. Besides, whether capable or not the last few years of his life is immaterial. He might have been incapable when he died in 1868 and capable in 1860 when the will was made.

The counsel for the appellant, to show the influence of the appellee over the testator, offered to prove that he had been with this woman (Mrs. Barnes,) at the time of the mother's death in the room below and he would inquire "Is she not dead yet ? I never saw a person so long dying," and on the next day he went away with this woman. This was excluded. It related to events in 1845 and neither shew nor tended to show the influence of the appellee fifteen years after, nor indeed at the time.

Joseph H. Estabrook, a physician, was called as an expert. He was asked what opinion he formed upon his examination of the testator. The court ruled that he might "be inquired of as to the circumstances and the symptoms that he observed and then state his inference from them." This is objected to as too restricted. The witness then proceeded to state all the facts within his recollection tending to show insanity. He was then asked to state whether he judged him sane or insane, to which he replied, "I thought him of unsound mind." After a further examination in relation to his means of knowledge in answer to the following question proposed by the appellant : "From these observations what was your opinion as to his mental soundness ?" the answer was, "I should pronounce him to be of unsound mind as I looked at him at the time." To other questions he said, "I saw no change that would give any better opinion of his condition," and that "he appeared worse at subsequent periods which might be attributed to increased age."

The examination of this expert by the counsel for the appellant will show that there was no restriction which prevented his telling all he knew in relation to the insanity of the testator as well as all he thought upon the subject. The appellant has no ground of complaint.

It is objected that witnesses were allowed to give their opinion

as to the business capacity of the testator. Evidence was received showing that he kept store, bought and sold goods, and supported his family. This was proper on the question of intellectual capacity to make his will.

But the learned counsel says, "the question at issue was one of topical insanity ; whether the testator was not under the influence of an insane delusion respecting the character and conduct of his children," If so, the evidence could have done no harm.    If his business capacity was shown to be good, proving what was not denied, might have taken time, but it could not have been productive of injury to the appellant.

There was no objection to the legatees stating that they had received their legacies.    Whether the fact was shown by their receipts, the signatures not being questioned, or from their own lips, was entirely immaterial.

The condition of the testator's house was entirely immaterial to the issue and could not have any effect upon the result.    A new trial will not be had in consequence of the introduction of irrelevant testimony, which could not influence the decision of the jury.

It is objected that Herbert T. Hewitt testified that he delivered a message from the appellee to the appellant that his father had fallen and injured himself. As the appellant had previously stated the fact of receiving the message, the confirmation of his testimony could not have harmed him.

The children of the testator had testified in the case in relation to the habits and mental condition of their father.    The petition signed by them for his discharge from guardianship was received and was admissible to contradict their testimony on these subjects. It was admitted for no other purpose.

The statements of Chadbourn as to what was his usual course of business, he not remembering the circumstances attendant upon the execution of the will was properly received.

*Motion and exceptions overruled.*
*Costs for the appellee.*

WALTON, DICKERSON, BARROWS, DANFORTH and VIRGIN, JJ., concurred in the result.