PHILIP E. BESSOM & another *vs.* FRANK A. BAYRD & another.

Essex.   January 9, 1933. — February 15, 1933.

Present: RUGG, C.J., PIERCE, WAIT, DONAHUE, & LUMMUS, JJ.

*Probate Court,* Jury issues.   *Will,* Validity.   *Undue Influence.*

An unmarried woman seventy-seven years of age, when of sound mind, with eyesight somewhat impaired due to advanced years, but with no other physical impairment which prevented her from giving attention to her social and business affairs, five years before her death made a will in which she named as executor and the principal beneficiary one, whom twenty-five years before she had assisted to a business position and who had assisted her for some years in business matters,

who had been named by her as executor of a will made five years before in which he was not named as a beneficiary, and who admitted that he stood in a fiduciary relation toward her. The second will was not drawn by the decedent's customary attorney but by one suggested by the executor, and she never saw him or any lawyer, nor had any independent advice, about it. When, later, she expressed dissatisfaction with the will and it was suggested to her that she employ her customary legal adviser to draw a new will, she expressed fear that such a course would make the executor "mad" so that he would not administer her estate, and stated that she wanted him to administer the estate. To him she spoke irritably about his failure to keep a promise to send an attorney for the making of a new will. Upon a petition for proof of the will, cousins who never had been close to the deceased and who were not named in either will moved that an issue be framed, whether the will was procured to be made by fraud or undue influence of the one named as executor. The motion was granted. On appeal, it was *held*, that an honest and genuine question of fact was presented, and that the motion properly was allowed.

PETITION, filed in the Probate Court for the county of Essex on March 22, 1932, for proof of the will of Matilda A. Breed, late of Lynn.

Frank A. Bayrd and Laura Breed Walker, cousins, moved that the following issue be framed for trial by jury: "Was the execution of said alleged will of said Matilda A. Breed procured in whole or in part by the fraud or undue influence of Philip E. Bessom, exercised upon the said Matilda A. Breed, and if in part, what part?"

The motion was heard by *White*, J., upon statements by counsel and oral testimony by Philip E. Bessom. In the course of his testimony, occurred the following: "Q. Did you feel as a man of education and banking experience that you were in a fiduciary relation to this old lady? A. I always felt so, yes. — Q. And did you have in mind that there were certain obligations incidental to that? A. Yes. — Q. And in a general way did you have in mind at the time of the execution of this will, that there might be some obligations as a fiduciary to at least take extra care before accepting a gift of substantially all the worldly property, to give it that name, to see that there would not be any appearance of a man of your position — A. That occurred to me."

Other material facts are stated in the opinion.

The judge framed the issue quoted in the opinion. The petitioners appealed.

*A. B. Tolman & J. E. Connor*, for the petitioners.

*J. W. Sullivan & J. F. Doyle*, for the respondents, submitted a brief.

PIERCE, J.   This is an appeal from an order of the Probate Court for the county of Essex in the matter of the probate of the will of Matilda A. Breed, late of Lynn, deceased, testate, allowing the following jury issue: "Was the instrument propounded for probate as the last will of said Matilda A. Breed procured to be made in whole or in part by the fraud or undue influence of Philip E. Bessom or any of them exercised upon the said Matilda A. Breed, and if in part, what part?"

The material facts disclosed by the record may be summarized as follows: Matilda A. Breed was eighty-two years old at the time of her death on March 11, 1932, at Lynn. She was of sound mind when she made her will in 1927 and down to the time of her death.   While she had trouble with her vision due to advanced age, she otherwise had no physical impairments which prevented her attention to her social and business affairs.   She never married, and at the time of the execution of her will and at her death her next of kin were cousins, the contestants, who were never close to her.   Her property consisted at her death of a dwelling house in Lynn, which was her home, worth between $5,000 and $10,000, a nineteen twenty-fourths interest in mercantile real estate in West Lynn, worth perhaps $20,000, and not over $1,000 of personal property.   Philip E. Bessom, who the contestants contend exercised undue influence upon the decedent, was at the time of the execution of the will president of the Sagamore Trust Company of Lynn.   He had for many years before then been connected with the Manufacturers National Bank and had obtained his position in that bank in 1902 through the influence of the decedent and her brother, Charles Orrin Breed, who died in 1910.   He became acquainted with the decedent in 1897, and had been friendly with William N. Flint, her nephew, who died in 1918.   The decedent made a will in 1922 which was

drafted by an attorney who was usually employed to advise in her business. Bessom was named executor of this will, but was not consulted about it and was not a beneficiary. The 1922 will gave certain small money legacies to former employees and the rest and residue to her sister-in-law, Lilla M. Breed, who died in 1927, for life, with power to use from the principal for her maintenance and support and to expend the same in charities, and in default of the exercise of her power gave the estate to the South Street Methodist Church and the missionary societies connected therewith, "the income to be used for the benefit of said church and societies."

Under the disputed will she gave some former servants and helpers small legacies, and gave the business real estate outright to Philip E. Bessom and the residue to him to be expended for such religious and charitable objects as he might deem best. Bessom collected the rents from the sole tenant of the mercantile property of the decedent and sent her a check, deducting a charge of $5 per month. He looked after the repairs on the real estate. The lessee paid the taxes.

In 1910 Bessom became the administrator with the will annexed of the decedent's father's estate, in which she shared. In 1918 he became the executor of the will of the nephew of the decedent, William Flint, in which she was substantially the sole beneficiary. Bessom had no pecuniary interest in either will.

The circumstances attending the execution of the 1927 will, in question, are substantially these: Hiram E. Miller, an attorney, late of Lynn, deceased, was constantly associated with Bessom in security business enterprises. Bessom got Mr. Miller, who had never done any work directly for the decedent, to draft the will. She came down to the Sagamore Trust Company alone. Later Bessom took notes for the will alone with the decedent at her home, and then took them to Mr. Miller's office and Mr. Miller drew a tentative will and mailed it to the decedent. She made some changes. Mr. Miller drew a new instrument and the decedent came down to the bank and executed the will. She

never saw any lawyer about the will or had any independent advice about it. It was witnessed at the bank by officers and employees who were subordinates of Bessom and were called in from their work to a private room at the bank to act as witnesses. The decedent never mentioned to any one that she intended to give Bessom anything under her will until she was making her will, when she said to Bessom: ". . . you have taken care of this property for us all these years, there's no reason why you shouldn't have it to take care of for yourself. I want you to have it. I want you to be well paid for anything you have done for me." Between 1927 and the death of the decedent she expressed to her housekeeper her dissatisfaction with the will and in general language said that "she had left or found she had left Philip too much." Her housekeeper suggested that she have Mr. Leighton, her regular attorney, come up and make another will, and the decedent said: "That would make Philip mad. I am afraid Phil will get mad and won't administer my estate and I want him to administer my estate." Later, the decedent went down to Bessom's bank and sent somebody from her automobile, and when Bessom came out she spoke with emphasis and irritability about his failure to attend to her making another will as he had promised. He promised then to have lawyer Connor come up the next day, but he did not do so.

On the above facts we think an honest and genuine question of fact is presented upon the issue within the rule stated in *Fuller* v. *Sylvia*, 240 Mass. 49. *Hayes* v. *Moulton*, 194 Mass. 157, and cases cited.

*Order affirmed.*