THERESA TARRICONE *vs.* JOHN F. CUMMINGS & another.

Middlesex.    March 9, 1960. — April 29, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, &
CUTTER, JJ.

*Probate Court,* Jury issues.    *Will,* Validity, Execution.    *Unsound Mind.
Undue Influence.*

In a contested will case involving a will, executed during the testator's last
    illness five hours before his death, giving all his property to a woman
    friend except for nominal gifts to nephews and a niece who were his
    next of kin, expected medical evidence as to the effect of his last ill-
    ness on his mental faculties, an alleged unusual appearance of his sig-
    nature on the will, and expected evidence of his relations with the
    nephews and niece and of the circumstances of the execution of the
    will in his bedroom with the three witnesses to the will present there
    did not require reversal of a denial by the judge of jury issues as to
    due execution of the will and soundness of mind.    [761–762]
A jury issue as to undue influence should have been granted in a contested
    will case where it appeared that the will, giving virtually all the tes-
    tator's property to a woman friend of his and naming her executrix,
    was written entirely in her handwriting and was executed during the
    testator's last illness five hours before his death, and witnessed by
    persons called by the woman, at country property of her and her hus-
    band where the testator had gone for a vacation about a week previ-
    ously because he was not feeling well.    [763–764]

PETITION for probate filed in the Probate Court for the
county of Middlesex on March 19, 1959.

A motion for jury issues was heard by *McMenimen,* J.

*Charles A. Watson,* for the contestants.

No argument nor brief for the proponent.

WILKINS, C.J.    An instrument is offered for probate as
the will of David J. Cummings, late of Cambridge.    Two
contestants have appealed from an order denying their mo-
tion for jury issues as to due execution, testamentary ca-
pacity, and fraud or undue influence by Theresa Tarricone.
The only statement of expected evidence was made by
counsel for the contestants.

The proposed will is entirely in the handwriting of Theresa Tarricone, in substance the sole beneficiary, who is named executrix. A copy appears in the margin.[1] The instrument was executed on March 6, 1959, at eleven o'clock in the forenoon, and Cummings died at four o'clock in the afternoon. He was sixty-one years of age and unmarried. A laborer in the department of public works of the city of Cambridge, he last worked on February 20, 1959. He was ill the following week with chronic bronchial asthma. This illness "was not even sufficient to have a daily treatment of a physician." After telling his employer that he wanted to take a week's vacation because he was not feeling well, he was driven by automobile to Spring Haven Lodge in West Alton, New Hampshire. The lodge was on the shore of Lake Winnepesaukee "and bounded on the north by mountains." It was owned by the proponent and her husband and served as both a ski and summer resort. The date of March 6 was between seasons. The only people available as witnesses were friends of the proponent who "lived in the same vicinity but some distance away, a mile away either on both [sic] sides."

"[O]ne of the witnesses allegedly read the will to the testator who was ill in bed at the time." This witness had no conversation with Cummings at the time in regard to the will. The illness of Cummings prevented that. "They [2]

---

[1] "Friday March 6 1959

I, Mr. David Joseph Cummings of 156 Allston St Cambridge, Mass. I want Theresa Tarricone of West Alton, New Hampshire to take care of my property in Cambridge, Mass while I am sick. This will give her the right to collect rents and pay all bills concerning me and my property during my illness.

In case anything happen to me, I want Theresa Tarricone to be Executrix without bond. I want all my belongings and the Estate of David Joseph Cummings to go to Theresa Tarricone of West Alton, New Hampshire, my faithful friend who has taken care of me for the past thirty years.

To the children of my deceased brothers, James Cummings, and William Cummings, I leave the sum of one dollar to each of them.

David J. Cummings
Witnesses
Harold A. Clough
Ruth A. Clough
Ernest S. Falda"

[2] We interpret this statement to refer only to witnesses.

were all present in the room and the will was allegedly read to Mr. Cummings."

There is "medical testimony that can show that he probably was disorientated at least four to six hours prior to the time of death." The signature is unlike any he had ever executed. Since "the signature is entirely illegible . . . he did not have the mental faculties to write out the name 'David J. Cummings,' a signature that he . . . always executed with a full hand."

There is medical testimony that he died of two causes: "chronic asthamatic bronchitis" and "acute coronary pulmonary, which is a lung disease, stoppage of the blood that is circulating to the heart." This is not an acute coronary attack at a moment's notice, but there is a period preceding death "when the person is in the throes of death and is possibly insensible to a great number of things going on even in his presence." "[O]n this medical evidence . . . there is enough . . . to show that David Cummings . . . would not have executed this particular type of will if he was in possession of all . . . his mental faculties."

Cummings had six nephews and a niece. He "had no particular aversion" to them, and was friendly with them all. He was very proud that the nephews had served in the war. He had a nephew who was killed in the service in World War II, and he had particular pride in these nephews and this niece.

The proponent is "a long time friend" of Cummings. He often referred to her as "a girl friend" and as a "divorcee with whom he kept company." She "enjoyed a relationship with him that was far more than a friendly relationship, and unlike what is stated in the will, he always lived alone," in his own apartment.[1] She was never there. He went to New Hampshire frequently on week ends "and mostly in the company of the chief beneficiary." He "was known to have given her gifts during . . . this particular period of twenty-five years."

---

[1] We infer that this was in Cambridge.

At the hearing below it was agreed that the mere absence of the attestation clause in and of itself was not conclusive that the instrument was not properly executed. This agreement was in accord with our decisions. *Ela* v. *Edwards*, 16 Gray, 91, 95. *Barber* v. *Henderson*, 304 Mass. 3. *Goodwin* v. *Riordan*, 333 Mass. 317, 318.

On the issues of soundness of mind and due execution the burden of proof is on the proponent. On the facts, as in our recent decision in *Burns* v. *Dunn, ante*, 526, these two issues are somewhat bound together. To prove that the instrument was executed according to law the proponent must prove that all the formal requirements of G. L. (Ter. Ed.) c. 191, § 1, were complied with, and that the decedent executed it with knowledge of its contents and with the intention that it should be his last will. *Morin* v. *Morin*, 328 Mass. 33, 34–35. To sustain that burden on the issue of mental competence (*Santry* v. *France*, 327 Mass. 174, 176) the proponent must meet the standard set forth by Chief Justice Qua in *Goddard* v. *Dupree*, 322 Mass. 247, 250: "Testamentary capacity requires ability on the part of the testator to understand and carry in mind, in a general way, the nature and situation of his property and his relations to those persons who would naturally have some claim to his remembrance. It requires freedom from delusion which is the effect of disease or weakness and which might influence the disposition of his property. And it requires ability at the time of execution of the alleged will to comprehend the nature of the act of making a will."

The expected evidence is most meager as to the relations between the contestants and Cummings. The petition for probate gives Cambridge as the residence of one nephew and the niece, and Pennsylvania, California, Dorchester, and Framingham as the respective residences of four nephews. There is nothing to indicate to what extent, if any, they saw him. It cannot be said that they were shown to be the natural objects of his bounty.

The judge could believe that the purported will was read to Cummings and was understood by him. It shows some

awareness of his property and of the existence of the children of his brothers. The expected evidence of disorientation for four to six hours before death was vague and did not require a conclusion of lack of testamentary capacity five hours before death. See *Connolly* v. *Phipps,* 280 Mass. 263, 266; *Burns* v. *Dunn, ante,* 526. An examination of the proffered will reveals that the signature is not wholly illegible, and does not show a complete lack of capacity to write his name. Giving due weight to the decision of the judge, we do not exercise our judgment to reach a contrary conclusion on these two issues even though, had they been granted, the rulings might not have been disturbed.

As to the issue of fraud and undue influence we feel otherwise. In this Commonwealth the burden of proof upon this issue is upon the contestants. *Smith* v. *Smith,* 222 Mass. 102, 106. *Hogan* v. *Whittemore,* 278 Mass. 573, 578. *Mirick* v. *Phelps,* 297 Mass. 250, 252. *O'Brien* v. *Collins,* 315 Mass. 429, 437. *Morin* v. *Morin,* 332 Mass. 223, 224. Had a member of the bar drawn this instrument making himself substantially the sole beneficiary without affording an opportunity for independent advice, we cannot doubt that this issue should be granted. *Tarr* v. *Vivian,* 272 Mass. 150, 153. *Mooney* v. *McKenzie,* 324 Mass. 685, 687–688. *Reilly* v. *McAuliffe,* 331 Mass. 144, 148–149. See *Wellman* v. *Carter,* 286 Mass. 237, 248. Compare *Wood* v. *McDonald,* 332 Mass. 220; *Spilios* v. *Bouras,* 337 Mass. 176.

In *Bessom* v. *Bayrd,* 282 Mass. 58, the principal beneficiary, a layman, took notes for the purported will while alone with the decedent and procured a lawyer, who was associated with him in business enterprises, to draw it. The framing of a jury issue as to fraud and undue influence was upheld. In *Doggett* v. *Morse,* 299 Mass. 383, an order denying this issue was reversed, where the principal beneficiary had typewritten suggested changes in the proposed will which was drawn by his attorney. At pp. 389–390, it was said: "It is true that he is not an attorney and that he did not make the final draft of the instrument . . . and while the court may appear more zealous in its scrutiny of what

amount to business dealings between an attorney and client, nevertheless, where an existing relationship of trust and confidence is shown between a beneficiary and testator, the general conduct of the beneficiary toward the testator and his acts with reference to the making of the will generally call for a searching examination. . . . The conduct of a trusted advisor prior to the making of a will in which he is named as beneficiary may be such as to amount to undue influence voiding the will, without proof of specific acts of the advisor at the time the will was made. *Davenport* v. *Johnson,* 182 Mass. 269."

In *Jones* v. *Simpson,* 171 Mass. 474, a decree of the Probate Court disallowing a proposed will on the ground of undue influence was upheld. At p. 476 it was said, "She then had two sons, who were her next of kin and presumptive heirs. One of these sons was her confidential and trusted adviser, and the alleged will is in his handwriting, is mainly in his own interest and upon his own statement it was executed by his mother without the knowledge of the rest of the family or a word of counsel from any one but himself. These are circumstances of suspicion, calling for care in the court which has the duty of deciding whether the instrument shall be admitted to probate, and requiring the court 'not to grant probate without entire satisfaction that the instrument does express the real intentions of the deceased.' *Baldwin* v. *Parker,* 99 Mass. 79, 87. *Ogden* v. *Greenleaf,* 143 Mass. 349." See *Hayes* v. *Moulton,* 194 Mass. 157.

Exercising our own judgment but giving due weight to the decision of the probate judge, we are of opinion that a jury issue should be framed on the issue of fraud and undue influence. The transaction clamors for scrutiny. The circumstances all indicate a writing drawn and executed with precipitate haste. The document, entirely in the proponent's handwriting, was executed on a death bed in property owned by her and her husband at a place remote from Cambridge. She inferably was responsible for calling the witnesses, although her whereabouts at the time of execution are not stated. A relationship of trust and confidence could

be found to exist. In the instrument the proponent is described euphemistically as "my faithful friend who has taken care of me for the past thirty years." Not only was there no opportunity for independent advice, but obviously no lawyer was consulted at all.

The order denying jury issues is to be modified by striking out the denial of the issue as to fraud or undue influence and by granting it, and as so modified, it is affirmed.

*So ordered.*