BENONI SPRAGUE et ux, Appellants, *v.* GARDNER LUTHER, Executor, Appellee.

The instructions to a jury were, that if fairly satisfied upon the evidence, that an instrument, purporting to be a last will and testament, was subscribed by the witnesses in the presence of the testator, so that he might have seen them sign if he chose;—and that the testator had made his mark to the instrument, or had acknowledged the instrument, presented to the witnesses, to be his will,—that would be sufficient proof of the execution of the will, though only one of the three witnesses swore to the facts;—*Held*, on exceptions, that the instructions were correct.

MOTION for a new trial of an appeal from a decree of a Court of Probate, allowing and establishing a certain instrument as the last will and testament of Sylvester Childs.

On the trial of the appeal in this Court, the appellants requested the Court to instruct the jury that it was incumbent upon the executor to prove that said instrument was signed by said Childs, in the presence of the three subscribing witnesses, or acknowledged by him as his last will and testament, in their presence; and that each of said witnesses saw it so signed, or heard said Childs so acknowledge it; and, further, that even if the said Childs did sign said instrument or acknowledge the signature to it, in the room in which, at the time, the three witnesses were, yet, if any one of them did not see him so sign, or hear him acknowledge the signature, the instrument was not legally executed as a will. The Court declined thus to instruct the jury, and, for error in this regard, a new trial is now prayed.

*Ashley, with whom was Blake, for the appellants.*

*Collins, with whom was Burges, for the appellee.*

BRAYTON, J. The objection before us, in the case of this present will, is, that assuming, as the testimony was, that the testator did sign the will when all the subscribing witnesses were in the room with him, the judge did not, though requested, charge the jury that if either of the witnesses did not see the testator sign, and did not hear him acknowledge the signature, the will was not legally executed; but, on the contrary, did

instruct them that if they were fairly satisfied, upon the evidence, that the will was subscribed by the witnesses in the presence of the testator, so that he might have seen them sign if he chose, and that the testator had made his mark to the will, or had acknowledged the instrument presented to the witnesses to be his will, that would be sufficient proof of the execution of the will, though only one of them swore to it; and a witness could not defeat the will by inattention to what was done in his presence.

The instruction asked here is, in substance, that the witness must not only be present at the signing or when the acknowledgment is made, but he must know and understand at the time—must heed the fact done in his presence.

For the rule contended for, no adjudged case has been referred to, and we find none upon which it can securely rest. On the contrary, there are cases in which the execution of the will has been held to be sufficiently proved when the subscribing witnesses did not see the signature of the testator, nor did they hear him either acknowledge the signature or declare that the instrument was his will; and even where the testator did not sign in the presence of the witness when it might have been seen by him.

In the case of *White* v. *British Museum*, 6 Bing. 310, the special verdict found that the testator had subscribed his name before the witnesses were called. Two of them, afterwards asked to become witnesses, subscribed their names to the attestation clause reciting the signers, &c., " in our presence as witnesses," but testified that they did not see the signature of the testator, nor were they informed of the nature of the instrument, or of the purpose for which they were requested to sign. The other witness was so informed.

Tindal, Ch. J., stated the question to be—Was the devise attested by them within the meaning of the statute? and said : " It must now be taken to be settled law, that it is not necessary for the testator actually to sign the will in the presence of the witnesses who subscribe; but any acknowledgment before the witnesses that it is his signature, or any declaration before them

that it is his will, is equivalent to an actual signing in their presence, and makes the attestation and subscription of the witnesses complete." The objection in that case was not, that the will was not signed in the presence of the witnesses, but that, as to the two witnesses, there was no acknowledgment of his signature, nor any declaration that it was his will, but that they signed their names in ignorance of the nature of the instrument and of the object for which their names were written. The question is then propounded, "Does the special verdict show an acknowledgment in fact to the witnesses that it was his will?" and the answer is affirmative upon these facts. The testator was conscious that it was his will; the signatures of the witnesses could not enure to charge them, and must have been to make them witnesses. They subscribed the clause of attestation, concluding—"In our presence as witnesses thereto."

These facts were held to place the testator and witnesses in the same situation as they stood where such oral acknowledgment of signature was made.

The witnesses did not see the signing nor hear any acknowledgment of it, so says the verdict; but nevertheless the acknowledgment was made by acts which the witnesses did not heed. In *Wright* v. *Wright*, 7 Bing. 457, the special verdict found that the instrument was written wholly by the testator, except the signatures of the witnesses. The testator signed in the absence of the witnesses. The first witness was informed by the testator that it was his will. The other witnesses were not informed that it was, and not one of the witnesses saw the signature. The testator was of sound mind, and immediately above the names of the witnesses was the usual attestation clause, ending, "in our presence as witnesses thereto."

In this case the will was held to be well attested, notwithstanding the witnesses did not see the testator sign, nor hear him acknowledge the signature or the instrument as his, but the testator did, in fact, acknowledge, but in a way the witnesses did not understand.

This case has been followed by other English cases.

These cases have also been followed in Massachusetts by the

case of *Hagan* v. *Grosvenor*, 13 Metc. 54, where one of the witnesses signed at the testator's request, but he did not notice the testator's signature,—did not know what the paper was, though he surmised it to be a will. The testator pointed him to the place where he would have him sign, which was the attestation clause. The witness saw the writing, but could not say what it was. The question here, also, was, if the will was legally attested, and the court say, "the tendency of the later cases has been, to give to the words of the statute their simple meaning. Signing by the witnesses, in the testator's presence, to a paper acknowledged by him, in some satisfactory manner, to be his, is a sufficient compliance with its terms." An acknowledgment that the instrument is his, with a request to the witnesses to attest it, is sufficient. Now, for proof of this acknowledgment, the testator pointed out the place for the witness to sign, and the court held that, from the testator's pointing to that place, a publication as his will might be inferred. And the language is, "the testator pointed out the place where he should sign, at which place his intention was made known, if the witness chose to read what he was called to attest." "He was in a situation," say the court, "to know the nature of the instrument."

Here, again, it was held that the will was well attested, though the witness did not know the nature of the instrument or any acknowledgment of signature. It was acknowledged in fact, in presence of the witness, and he was in a situation to have known it, had he read that to which he was pointed, but he did not.

These authorities will not warrant the granting of a new trial in this case, and the petition therefore must be dismissed with costs.