ELI S. NEWELL, Appt., *vs.* J. ELLIS WHITE, *et al.*

DECEMBER 19, 1908.

PRESENT: Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1) *Wills. Proof of Execution. Presumptions.*

The attestation clause of a will was as follows: "On this 26th day of October, 1905, we three at the request of the above named X. in his presence and in the presence of each other hereunto subscribe our names as witnesses"

     A. B.
     C. D.
     E. F.

At the trial, the subscribing witnesses severally denied that they signed the will, and two of the witnesses offered evidence tending to prove that they could not have signed such will on the date given.

Admittedly genuine signatures of the attesting witnesses and of the testator were submitted to the jury for comparison:—

*Held*, that the presumption of law applicable to the case of deceased witnesses—that proof that they subscribed is proof that they signed in the testator's presence and he in theirs—could be applied in the case of witnesses who not only denied the formal facts regarding the attestation, but also their signatures.

*Held*, further, that the presumption that all things have been done regularly includes regularity in the order of signatures upon an instrument.

*Held*, further, that, whether the signatures on the will were genuine and whether the will was properly executed were questions of fact upon the evidence offered, and within the province of the jury to determine.

PROBATE APPEAL. Heard on exceptions from Superior Court. Exceptions overruled.

DUBOIS, J.   This is a probate appeal to the Superior Court from the decree of the Probate Court of the city of Pawtucket, whereby said court refused to admit to probate an instrument as the last will and testament of William E. Newell, late of said Pawtucket, deceased.   Upon trial in the Superior Court the jury rendered a verdict that said instrument is the last will and testament of said William E. Newell, and the case is now before this court upon the exceptions of Emily R. Newell, the widow of said deceased, to the decision of the Superior Court denying her motion for a new trial.

The only portions of the will that need be referred to as being important in this consideration are the following:

"In testimony whereof I hereunto set my hand and seal this twenty-sixth day of October A. D. 1905.

"WM. E. NEWELL,   (Seal.)

" On this twenty-sixth day of October, 1905, we three at the request of the above named William E. Newell, in his presence and in the presence of each other hereunto subscribe our names as witnesses.

"EDMUND D. ROBERTS, .
"EARL H. ROBERTS,
"ROY L. ROBERTS."

The requisites of a valid will are contained in Gen. Laws cap. 203, § 13: "No will shall be valid, excepting as provided in sections twenty and thirty-six of this chapter, unless it shall be in writing and executed in manner hereinafter prescribed; that is to say, it shall be signed by the testator, or by some other person for him in his presence and by his express direction; and such signature shall be made or acknowledged by the testator in the presence of two or more witnesses present at the same time, and such witnesses shall attest and shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary, and no other publication shall be necessary."

At the trial in the Superior Court, the death of the testator and of the person who wrote the will having been proved, the subscribing witnesses to the alleged will were called upon

to testify, and they severally denied that they signed the will in question, and each of the witnesses Edmund D. Roberts and Roy L. Roberts, in addition to denying his signature, testified that he could not have signed said will at the time of the date thereof, because of his absence from the place of its execution at the time thereof.  The former testified that on the morning of October 26, 1905, he left home "between eight and perhaps quarter past, along there," and went to his business, at Abraham Brothers, in Providence, where he remained all the business day; that he left there at five o'clock, and walked home, arriving at about a quarter to six; that he did not go to dinner that day, and was not at home between the hours of eleven and two o'clock; that he fixed these times from a diary which he kept at that time.  Roy L. Roberts testified that on the twenty-sixth day of October, 1905, he was in attendance at the Pawtucket high school, and stayed there until school closed, at half-past one; that the school was about a mile and a quarter from the house, and that it would take him about twenty or twenty-five minutes to go from the school to his house; that it was about two o'clock when he reached home on the day in question.

He was asked if there were any days when he was excused earlier than the hours he had named, and he replied: "not to my memory."  The witness was further examined by counsel for the appellee, without objection or exception, as follows:    "Q. Have you taken any pains to verify your attendance on that day ?   A. Yes.    Q. What are they ?   A. A letter from the principal, Mr. Hosmer:

"'MR. ROY L. ROBERTS,
          "2 STATE STREET,
                    "WORCESTER, MASS.

    "' I have looked up your matter, and find you were present in school on October 26th, 1905.  Wishing you and the other Pawtucket boys who are in Worcester, continued success,
"'I am,                     Very truly yours,
                              "'E. S. HOSMER.'"

Admittedly genuine signatures of the attesting witnesses to the will on other writings were submitted to the jurors for comparison with the disputed writing in order that they might determine the genuineness, or otherwise, of the writing in dispute, under the provisions of C. P. A. § 399, which reads as follows: "Comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine shall be permitted to be made by witnesses; and such writings, and the evidence of witnesses respecting the same, may be submitted to the court and jury as evidence of the genuineness, or otherwise, of the writing in dispute."

In a case where the sole issue was whether the defendant signed a bond, it was held that legal evidence of that fact was admissible, although the defendant had been called as a witness by the plaintiff and had denied it. The evidence admitted and approved in that case consisted of genuine signatures of the defendant, together with the testimony of a witness who compared the same with the disputed writing. *Municipal Court* v. *Kirby*, 28 R. I. 287. The difference between that case and the case at bar in this particular is that no witness was called in this case to make comparison between the genuine and disputed writing, but the genuine signatures were submitted to the court and jury as evidence of the genuineness of the writing in dispute. No objection was made to the introduction of such evidence, and no exception was taken to its allowance by the court.

Genuine signatures of the testator upon other instruments were also offered to the jury to compare with the signature upon the will in question, and in addition the appellant testified that this instrument was prepared at his residence by Rufus G. Fairbanks, a lawyer and second cousin to the deceased, who came specially from West Medway, Massachusetts, for that purpose; that said Fairbanks said to the testator: "Are you ready to fix up your will now?" that the witness and his wife were the only persons present at that time, and that they were requested to step out, and did step out, into the kitchen; that this was about eleven o'clock on the twenty-sixth day of October, 1905; that the testator left about twelve

o'clock and went across the street to a newspaper store and got a paper and then went down to where the witnesses Roberts lived, the place where he was getting his meals at that time; that the testator returned to the house of the appellant some time after one o'clock of the same day, and said, "I had Roy sign it, too;" that William E. Newell had the will with him when he returned, and the appellant then saw the signatures of the testator and of the three witnesses, the same that are there now.

The appellant further testified: "And then he said he had executed this will, and named Rufus as executor, because he didn't want Emily or Stuart to have anything to do with settling up his business. Q. Do you know who he referred to as Emily? A. Yes; his wife. Q. Do you know who he referred to as Stuart? A. Yes, sir. Q. Who? A. William T. Stuart." . . . "Q. Whether or not Mr. Stuart you have referred to is a person who had transacted some business for Mrs. Emily Newell? A. I suppose he acts as her financial agent." . . . "Q. Who was present at the time? A. My wife. Q. And I think you said Rufus was present? A. Rufus, and my wife, and I. Q. Rufus you say died in his lifetime? A. The 17th day of January, 1907. Q. And is your wife in court? A. No, sir. Q. Was she able to come to-day? A. No."

The principal argument against the will is that there is no evidence, either that the testator signed the will in the presence of the witnesses, or acknowledged his signature, theretofore made, to be such in their presence.

In the case of death of the witnesses, this court has decided, *Christopher Fry's Will*, 2 R. I. 88, that proof that the witnesses subscribed is proof that they signed in the testator's presence and he in theirs—"*Omnia præsumuntur rite et solenniter esse acta donec probetur in contrarium.*" In the case of witnesses who deny not only that the testator signed the will in their presence and that they signed the same in his presence, but who also deny their signatures thereon, and who are discredited by proof that those signatures are genuine, another maxim: "*Falsus in uno, falsus in omnibus*," may be applied in con-

sidering their testimony, and the former presumption that applies in the case of deceased witnesses may be applied in their case; for, so far as the truth of the case is concerned, they might as well, or better, be dead.

The genuineness of the signatures of the testator and witnesses having been proved to the satisfaction of the jury and of the judge who presided at the trial in the Superior Court, the appellee contends as follows: "*The question is whether in the absence of any evidence that the testator made or acknowledged his signature in the presence of two or more witnesses present at the same time, such an imperfect attestation clause is sufficient to raise the presumption that the testator did so sign or acknowledge his signature to the will.*"

The point is not a novel one in this State. In the case of *Christopher Fry's Will, supra,* at p. 91, Brayton, J., speaking for the court, says: "Proof that the witnesses subscribed is proof that they signed in the testator's presence and he in theirs."

Where a party is bound by law to produce a certain witness, such as a subscribing witness to a will, he is not deemed to vouch for his credit, and if such witness give damaging evidence against him, he may contradict him. See 29 Am. & Eng. Encyl. Law, 1st ed. p. 816, note 1 and cases cited.

"Where the witness is not one of the party's own selection, but is one whom *the law obliges him to call,* such as the subscribing witness to a deed, or a will, or the like; here he can hardly be considered as the witness of the party calling him, and therefore, as it seems, his character for truth may be generally impeached. But, however this may be, it is exceedingly clear that the party, calling a witness, is not precluded from proving the truth of any *particular fact,* by any other competent testimony, in direct *contradiction* to what such witness may have testified, and this is not only where it appears that the witness was innocently mistaken, but even where the evidence may collaterally have the effect of showing that he was generally unworthy of belief." 1 Greenl. Ev. § 443, and cases cited. This doctrine is recognized in *Hildreth* v. *Aldrich,* 15 R. I. 163.

"The law is well settled, that a will may be supported against the testimony of some, or even of all of the subscribing witnesses thereto, if their testimony is overborne by other evidence. . . . . Were the law otherwise, any will might be defeated by a corrupt attesting witness." *Will of Jenkins,* 43 Wis. 612, approved in *Will of Meurer,* 44 Wis. 401.

"It is, of course, too late to claim that the facts making due execution must all, or any of them, be established by the concurring testimony of the two subscribing witnesses. Both of those witnesses must be examined, but the will may be established, even in direct opposition to the testimony of both of them. This is too well settled to call for the citation of authorities." *Trustees of Auburn Seminary* v. *Calhoun,* 25 N. Y. 425 (1862), citing *Tarant* v. *Ware, Id.*

In *Orser* v. *Orser,* 24 N. Y. 52, Selden, J., stated the law as follows: "The result of the authorities upon the probate of wills is, that the question of the due execution of a will is to be determined, like any other fact, in view of all the legitimate evidence in the case; and that no controlling effect is to be given to the testimony of the subscribing witnesses. Their direct participation in the transaction must, of course, give great weight to their testimony; but it is liable to be rebutted by other evidence, either direct or circumstantial. A will, duly attested upon its face, the signatures to which are all genuine, may be admitted to probate, although none of the subscribing witnesses are able to swear, from recollection, that the formalities required by the statute were complied with; and even although some of them should swear positively that they were not, if the other evidence warrants the inference that they were. It might be difficult, though, I think, not impossible, to establish the will if all the subscribing witnesses should state positively that the statutory requisites were not observed. But, however this may be, the authorities are abundant to to show that, where testimony favorable to the due execution of the will is derived from some or one of those who subscribed it as witnesses, it becomes a mere question as to the relative weight of the evidence, whatever may be the testimony of the

others. (*Jauncey* v. *Thorne*, 2 Barb. Ch. 40, and cases there cited.)"

In *Ela et al.* v. *Edwards*, 16 Gray, 91, it is stated by Dewey, J., as follows: "It seems therefore to be well established that the fact of the want of an attestation clause does not invalidate the will. It does not, in the case of the death or absence from the jurisdiction of the court of one or all the witnesses, defeat the probate of the will, but only changes the nature of the proof. Instead of its being shown by the attestation clause that there was a compliance with the statute, the court, or jury, if the case is tried by a jury, are to be reasonably satisfied of the fact of a proper attestation from other sources and the circumstances of the case."

The case of *Matter of Will of Cottrell*, 95 N. Y. 333, is similar in some respects to the case at bar, and the following extracts from the opinion of Ruger, Ch. J., therein are pertinent in the present inquiry:

"Although the occasions in which all of the subscribing witnesses testified positively against the due execution of a will have been infrequent of late years, a number of such instances are reported among the earlier English cases which have been cited with approval in recent cases in our courts. Those cases are collated and commented upon in the case of *Tarrant* v. *Ware*, by Judge Denio, reported as a note to the case of *Trustees of Auburn Seminary* v. *Calhoun* (25 N. Y. 425)." . . .

"The determination of the question of fact involved in the inquiry as to whether a will has been properly executed or not is governed by the same rules which control in the trial of other questions of fact. The proponent has the affirmative of the issue, and if he fails to convince the trial court by satisfactory evidence that each and every condition required to make a good execution of a will has been complied with, he will necessarily fail in establishing such will.

"It would undoubtedly have been competent for the trial court in this case to have denied probate to the will in question upon the evidence before it, and in that event we should have been bound by its decision. This, however, it has not done,

but on the contrary has found that the will was duly executed.

"Upon referring to the evidence in the case, we certainly find quite an unusual and extraordinary condition. The two persons purporting to have signed this will as subscribing witnesses, not only each testify that none of the formalities required by the statute were complied with in its execution in their presence, but also positively deny that either of them was present at its execution or signed the attestation clause. No greater weight can be given to that part of the evidence of these witnesses wherein they deny that the several formalities required by the statute were unperformed in the execution of this will, than to their more important testimony that they were not present on the occasion and did not sign the attestation clause. It follows of course that if they do not recollect or perversely refuse to testify to the interview itself, that they would also deny the several incidents which accompanied such an interview.

"If, therefore, it was established by competent evidence that these witnesses were mistaken as to the fact of acting as witnesses to the execution of this will, it would almost necessarily follow that they were also mistaken in their testimony as to the several particulars occurring at the time of such signing. 'If so important a fact as the signature of their names as witnesses has escaped recollection, the accompanying incidents must have shared the same fate.' 'The denial of the principal event necessarily involves all the details in the same result.' (*Peebles* v. *Case*, 2 Bradf. 236.) Upon looking into the evidence we find that it was in proof that the testator boarded and lodged with the alleged subscribing witnesses (who were husband and wife) not only at the time the will purported to have been executed, but had done so for several years previous thereto. That the husband had been a subscribing witness to a will previously executed by the testator, and that the will in dispute, apparently properly executed, was found among the papers of the deceased after his death. It also appeared that the will, as well as the attestation clause, was wholly in the handwriting of the testator, and also bore his undoubted signature at the end thereof. The testator declared during his

last sickness that the will executed as he had described it was either among his papers or that he had given it to his executor. A bag containing the testator's papers, and among which was the will in question, was produced by the executor at a meeting of the testator's relatives, including the contestants, held at such executor's house on the day of the testator's death, and its contents were then for the first time made known to the parties interested by one of such relatives, who read it in the presence of the persons there assembled. Specimens of the handwriting of each of the subscribing witnesses were properly put in evidence on the trial, and from a comparison of such specimens with the signatures of the witnesses to the attestation clause, experts testified that such signatures were respectively in the genuine handwriting of such witnesses."
. . .

"The surrogate has found as a fact upon conflicting yet competent evidence, that the subscribing witnesses to the will in question in fact signed the attestation clause. . . .

"The witnesses to the will have, by signing the attestation clause, certified to facts taking place upon its execution, directly conflicting with the evidence given by them upon the trial. To believe this evidence requires us to suppose that the testator deliberately forged the names of witnesses to his will at a time and under circumstances when it was just as convenient for him to have obtained their genuine signatures thereto. Upon this evidence the surrogate has refused to give credit to their testimony, and must, we think, necessarily have found, for reasons appearing sufficient to him, that none of the evidence given by them was entitled to belief. While no motive or reason appears upon the face of the evidence incorporated in the record before us, for imputing corruption or perjury to the subscribing witnesses in giving such evidence, yet to believe what they testify to on the subject involves consequences so unnatural and improbable that we are constrained to hold that the surrogate was justified in discrediting their testimony.

"The affirmative evidence tending to show an omission on the part of the testator and witnesses to comply with the

requirements of the law, in the execution of the will, having been thus discredited by the court below, it only remains to determine whether there was, within the rule, sufficient evidence of the facts to authorize the surrogate to find the due execution of the will.

"It would seem from the language of the Code that proof of the handwriting of the testator, and of the subscribing witnesses, to a proper attestation clause, was regarded as the most important and conclusive fact on the trial of an issue as to a proper execution of a will. Such evidence, in connection with other circumstances tending to prove its due execution, would seem, within all the authorities, to justify a decree admitting it to probate, even against the positive evidence of the subscribing witnesses. It was always considered to afford a strong presumption of compliance with the requirements of the statute, in relation to the execution of wills, that they had been conducted under the supervision of experienced persons, familiar not only with the forms required by the law, but also with the importance of a strict adherence thereto. (*Chambers* v. *Queen's Proctor*, 2 Curteis, 415; *In re Kellum*, 52 N. Y. 519; *Gove* v. *Gawen*, 3 Curteis, 151; *Peck* v. *Cary*, 27 N. Y. 9.)

"We think that that presumption also arises in this case. The testator had not only once correctly gone through the ceremony of executing a will, but by drawing the attestation clause in question he had at the time necessarily brought before his mind each one of the conditions imposed by the statute as necessary to its valid execution. It is quite unreasonable to suppose that such a person having drawn and signed a will, and having added thereto a proper attestation clause, should have provided witnesses therefor, and required them to sign a certificate to the effect that each of the required formalities had then been observed, without also providing for their actual performance. He had knowledge of the necessity of the act required, to the validity of the business he was then transacting, and to hold that he omitted it would oblige us to ascribe to him the intention of performing a vain and useless ceremony at the expense of time and labor to himself and the commission of a motiveless crime. The presumptions arising

from the certificate of the subscribing witnesses, and the super-
vision of an experienced person that the requisite formalities
were complied with, are fortified by the acts and conduct of
the testator. Nearly three years elapsed between the date of
the will and the death of the testator, and he had, therefore,
ample time and opportunity to supply any defects in its execu-
tion, if any existed, but at the last moment, when the subject
of a will was brought to his attention, he evidently supposed
that he had made a valid testamentary disposition of his
property.

"It also appears that it was executed while the testator
was living in the family of the alleged witnesses; that one of
them had formerly acted in a similar capacity for him, and
that they were both, persons who for convenience, as well as
from their relations to the testator, would naturally have been
selected as witnesses to a will drawn by himself, and whose
execution he personally supervised.

"We think the various circumstances to which we have
referred, in connection with the full and regular attestation
clause in the handwriting of the testator, proved to have been
signed by the witnesses, were sufficient to authorize the finding
by the court below establishing the will."

The presumption that all things have been done regularly
includes regularity in the order of signatures upon an instru-
ment.

As was well said in *Dewey* v. *Dewey*, 1 Met. 354: "The
purpose of procuring the attestation of the witnesses was to
give effect to the instrument as a valid will. It can hardly be
supposed that the testator, who was by his own active agency
procuring the authentication of the instrument by the requisite
witnesses, would have omitted the first step necessary to its
due execution, viz.: the signature of himself."

In *Allen* v. *Griffin et als.*, 69 Wis. 533, the court said: "We
think, in the absence of clear proof that the witness or wit-
nesses signed before the signing of the testator, it should be
presumed that the testator signed first. This would be the
usual order of signatures."

"That the testator signed the will first is indicated by the

will." (Citing *Dewey* v. *Dewey*, 1 Met. 354.)  *Barnes* v. *Barnes*, 66 Me. 296.

Whether the signatures of the testator and those of the witnesses, on the instrument in question, are genuine or not, and whether the will was properly executed, were questions of fact and clearly within the province of the jury to determine. Their verdict in favor of the will has been approved by the justice of the Superior Court who presided at the trial. A verdict so approved is not to be disturbed without weighty reasons against it. *Wilcox* v. *Rhode Island Company*, 29 R. I. 292. No such reasons appear in this case.

The exceptions of Emily R. Newell are therefore overruled, and the case is remitted to the Superior Court for further proceedings in conformity herewith.

BLODGETT, J., dissenting. The three persons whose names purport to be subscribed to the instrument in question severally testify that the signatures thereon are not their signatures, and that the deceased not only did not sign the instrument in question in their presence, but that they did not even know that he had left an alleged will until after his decease. No one of these witnesses is related, either by blood or marriage, either to the deceased, to any of his heirs at law, or to any of the legatees or devisees under the will, and each one of them is without pecuniary interest of any kind, whether probate be granted or denied. Their reputation for veracity is not impeached, and two of them testify that they were not at the house in Pawtucket, where it is claimed they acted as witnesses at the time the instrument is supposed to have been executed— one being in Providence, and the other in attendance at the Pawtucket high school, more than a mile distant; the testimony of the latter being confirmed by a reference to the school record, which shows his presence at school on the day in question. No attempt even is made to deny this alibi of these witnesses, but the case for the proponents rests solely on certain admittedly genuine signatures of these witnesses to certain letters and checks which were submitted to the jury without a word of expert testimony as to their similarity or identity with the

signatures in question; and the only contrary testimony is that of the brother of the deceased, who is also the principal beneficiary under an instrument purporting to be the last will and testament of a childless testator, more than seventy years of age, who thereby gave his wife only "her dower right in my estate." This witness does not testify that the deceased and the three persons whose names are subscribed as witnesses even met on the day in question, but avers that the deceased told him that he had executed a will and says he saw it (but did not read it), and that the three names were there then as they are there now.

I see no reason to believe that three disinterested witnesses are more liable to be in error, or to swear falsely concerning the genuineness of their own signatures, than one interested witness is to be in error in respect of his testimony and am of the opinion that in this case the testimony so strongly preponderates against the verdict that it should be set aside and a new trial ordered. At such trial further evidence may be offered, on the alibi of the two witnesses above referred to, which may or may not be of assistance in determing the issue presented.

There is a further consideration to which it seems proper to advert. The attestation clause is as follows: "On this twenty-sixth day of October 1905, we three at the request of the above named William E. Newell, in his presence and in the presence of each other hereunto subscribe our names as witnesses." There is no word here which indicates that the instrument so subscribed is a will; neither is it claimed that there is any evidence in the record that the deceased declared the same to be his will or that knowledge of this fact was in any way imparted to, or, indeed, possesssed by, any of them. The attestation clause is defective also in that it does not purport to set forth that the signature of the testator was made or acknowledged in the presence of the subscribing witnesses. In other words, if the subscribing witnesses should admit, not only the genuineness of their signatures, but, also, should confirm, by their affirmative testimony, every fact set forth in the attestation clause, there would still remain a failure to

prove that the testator either signed in their presence, or, having previously signed, declared the signature to be his in their presence; and that requirement of the statute would rest only on the *presumption* that, inasmuch as the statutory number of witnesses testified that they signed as witnesses at the request of the testator and in his presence and in the presence of each other, it must follow that the testator on his part had previously made or acknowledged his signature in the presence of all of them and of no number less than all of them. I am not unmindful of the decision of this court in *re Christopher Fry's Will,* 2 R. I. 88, but in that case all the witnesses were dead, and here there is the testimony of three witnesses against the presumption.

In *re Will of Cottrell,* 95 N. Y. 329, *supra,* the facts are not dissimilar to those in the case at bar; but there are three observations to be made on that case. First, that the court there expressly says in the opinion that by a recent statute it was limited to a consideration of questions of law only, expressly stating also that if the verdict had been against the will in that case they would have been powerless to disturb such a verdict on the evidence. Second, though not necessarily controlling, the code of New York expressly provided for the method of proceeding when the subscribing witnesses should either forget or deny the fact of signature; and lastly, that in that case the attestation clause completely set forth all the requirements of the statute of New York concerning the execution of a will. In this case no witness pretended to say whether the deceased signed at his brother's house or at the newspaper store which he immediately entered after the interview with the attorney who prepared the instrument, and then later acknowledged his signature at the residence of the three persons whose names are subscribed as witnesses, or whether he signed the same at such residence. From beginning to end of this record there is not a word to indicate the time or place of the actual signature of this instrument by the deceased, and the presumption is no greater in favor of any one of these three places and two methods of execution than in favor of any other of them. Yet in two of these places it is not claimed that the

witnesses were present, and the validity of the instrument is thus dependent upon several presumptions, each of which is negatived by the testimony of three witnesses, viz.: the presumption that the deceased signed (for no person claims to have seen him sign), and the further presumption that he subsequently declared his signature in the presence of all three and not of any one only, or of any two only, of the three— thus adding one presumption upon another.

The facts undoubtedly present a most unusual and extraordinary case, but upon this record I am of the opinion that the burden of proving the due and solemn execution of this instrument which the law wisely casts upon the proponents has not been sustained, and that there should be a new trial.

*Louis L. Angell,* for appellant.

*Nathan W. Littlefield* and *Thomas P. Corcoran,* for appellee, Emily W. Newell.