SUSAN P. MAYNARD *et al. vs.* HARRISON JACOBS, *Ex.*

MAY 2, 1928.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

STEARNS, J. The Probate Court of North Smithfield admitted to probate a document purporting to be the will of Henry A. Brooks, deceased. On appeal the case was tried by a justice of the Superior Court sitting without a jury and decision was rendered sustaining the will.

The case is here upon appellants' bill of exceptions.

During the trial some exceptions were taken to the admission *de bene* of certain testimony of statements made by Brooks when the document was executed. As this testimony was subsequently excluded by the trial justice, it is unnecessary to consider these exceptions. The only exception remaining is to the decision of the trial justice.

The will is as follows:

"Atlantic City, New Jersey.
September 4, 1924.

To whom it may concern:—

I Henry A. Brooks being of sound mind and in good health, I make this my last Will and Testament, I hereby appoint Harrison Jacobs of Uxbridge Mass as Executor without bonds.

To Gertrude Conway Bowen $2000.00 in Cash
To Vera Conway             $500.00  "  "
To Mary Mosher             $500.00  "  "
To Frederick Draper        $100.00  "  "
To Ellery Christenson      $50.00   "  "
To Harrison Jacobs         $2000.00 "  " All horses, harnesses, wagons and farming tools and implements.
To Mary Bessette all my wearing apparel.
To William J. Conway, all my real estate, mortgages and personal property and all balances of cash in the banks, after all bills and expenses are paid.

I request that William J. Conway will take care of the family lot in Slatersville Cemetery.

Sign:—Henry A. Brooks

Witnesses:—
Alvin Massey
Marcus D. Goff."

There is no substantial conflict in the evidence except with respect to the genuineness of Brook's signature.

At the time of his death Henry A. Brooks was about seventy-nine years of age. He lived on his farm in the town

of North Smithfield. One witness described him as "well read" and "very smart." His sister Ellen, who had lived with him for years died in 1920. He had no near relatives, and for awhile after his sister's death he lived alone. William J. Conway at one time had taken violin lessons from Brooks. Although a younger man, the two men became intimat friends and Conway finally went to live with Brooks sometime prior to his death. Harrison Jacobs had known testator for over thirty years; he lived on his own farm about two miles distant. They were old friends and were accustomed to visit together.

In the summer of 1922, Brooks took Conway with him on a short visit to Newport. The next summer he took him to the White Mountains. These trips were unusual events for Brooks as he was unaccustomed to travel.

August 29, 1924, Brooks took Conway with him to Atlantic City. After a long search, he secured rooms in a small rooming-house of which one McCann was a part owner. McCann was sixty-seven years of age; for years he had been a special officer on the Pennsylvania Railroad. He and Brooks soon became friends and were together much of the time. In the front of this house, on the second story, was a large porch which was used by the lodgers as an outdoor sitting room. By agreement of counsel the transcript of the testimony of McCann given at the hearing in the probate court was used as a deposition at the trial in the Superior Court. Mr. McCann testified that one afternoon, several days after Brook's arrival, he was sitting on the porch reading a newspaper; not far away Brooks was engaged in a conversation with two men, lodgers in the house; he thought they were traveling salesmen, as he had often seen them making out order slips on a portable typewriter which they carried with them, but he did not know their names, as no guest register was kept. One of these men was typewriting on a plain sheet of white paper, apparently at Brook's request; he saw Brooks later sign this single sheet of paper, with a pen which he took from a writing table near at hand; each of the salesmen then wrote

on the same paper, using a fountain pen which one of them took out of his pocket. This paper was then folded, put in a long white envelope which was sealed by Brooks and placed in his pocket. McCann had previously advised Brooks to make a will as he was an old man. He did not hear any of the conversation as he was busy reading. The paper and envelope which were produced by Jacobs later at the probate court, McCann testified, corresponded in every particular with the paper and envelope which he saw at Atlantic City. Jacobs testified that one day in Brook's kitchen, after his return from Atlantic City, Brooks delivered to him a sealed white envelope and asked him to take it home and take care of it. There was no writing or other mark on the envelope. Jacobs took it home, gave it to his wife and she placed it in a safe in their sitting room. He did not know what was in the envelope or that Brooks had made a will.

Brooks died March 21, 1925. Search was at once made to see if he had left any will and Jacobs and Conway, together with an officer of the safe deposit company, went to Brook's safe deposit box but found no will therein. Thereafter one Mr. Carpenter petitioned the probate court to be appointed custodian of the estate. At the hearing on this petition, March 28, 1925, Jacobs stepped out from the audience, advanced to the table in the court room and placed thereon a sealed white envelope and said, "Perhaps this will help things out." The envelope was then opened by the clerk of the court and the document now in question was found therein. Jacobs and his wife testified that it had that day been taken from the safe and was in the same condition as when placed therein.

Proof of testator's signature was made by the testimony of two experts based on comparison with admittedly genuine signatures. The only testimony for the contestants was that Brooks was deaf and that of one handwriting expert who said that in his opinion the Brook's signature was not genuine. Proponents of the will testified that diligent and extensive search had been made for the witnesses, Massey

and Goff, but without success and as a consequence other proof of their attestation was not possible.

General Laws, C. 298, s. 13, provides that a will shall be signed by a testator and such signature shall be made or acknowledged in the presence of two or more witnesses present at the same time, and such witnesses shall attest and shall subscribe the will in the presence of the testator, but no form of attestation, and no other publication shall be necessary.

In *Christopher Fry's Will*, 2 R. I. 88, the will had no attestation clause. The form of execution was as follows:

"Christ. Fry.       L. S.

Witnesses,

Jas. Willoughby,

J. C. Maigne,

D. G. Fisk."

All of the witnesses died before the testator. There was no proof that the will was signed by the testator in the presence of the witnesses or that they subscribed their names in his presence. The only proof of execution was of the handwriting of testator and the witnesses. It was held that it may be presumed from the fact of their subscribing as witnesses, that the requisites of the statute had been complied with, though there is no attestation clause; that when the witnesses called to attest the facts can not be had and are beyond the power of the party to produce, from death or other cause, in such case secondary evidence may be given.

In *Langley* v. *Langley*, 18 R. I. 618, it was held that the provision of the statute relating to witnesses to a will is purely probatory, its purpose being to insure the identity of the writing produced as the will of the testator and so to prevent fraud; and that such provisions were to be considered simply as a question of legislative policy with respect to the amount of proof which should be required.

In *Newell* v. *White*, 29 R. I. 343, the following rule of law, as stated in *Ela et al.* v. *Edwards*, 16 Gray 91, was approved.

The want of an attestation clause does not invalidate a will. The death or absence from the jurisdiction of the court, of one or all of the witnesses does not defeat the probate of a will, but only changes the nature of the proof. Instead of its being shown by the attestation clause that there was a compliance with the statute, the court or jury, if the case is tried by a jury, is to be reasonably satisfied of the fact of a proper attestation from other sources and the circumstances of the case. In the *Newell* case the subscribing witnesses to the will severally denied that they signed the will. Admittedly genuine signatures of the testator and of the witnesses were submitted to the jury for comparison. The will contained an attestation clause in the usual form but there was no other evidence of the facts recited therein. After a verdict sustaining the will, on exceptions taken, it was held that the questions whether the signatures on the will were genuine and whether the will was properly executed were questions of fact on the evidence, and within the power of the jury to determine.

In *Hopkins* v. *Wheeler, Ex'x.*, 21 R. I. 533, a witness to a will affixed her signature thereto in a room adjoining a room in which the testatrix was in bed. As testatrix, if she had looked, could have seen the witness when she signed, it was held that this was a signing in contemplation of the law in the presence of the testatrix and it was immaterial whether testatrix actually saw her sign. See also *Sprague* v. *Luther*, 8 R. I. 252.

As thus appears, the questions of the genuineness of the signatures on a will and the proper execution thereof are questions of fact which must reasonably be established by any legal evidence.

The requirements of proof in a particular case properly must be determined to some extent by the nature and amount of proof which it is possible to present.

In the case at bar the evidence is convincing that the three signatures were made by different persons and that Brooks gave this will in its present condition to Jacobs. The trial justice has decided that the signatures of Brooks

230

is genuine. The natural and reasonable conclusion is that Brooks by his conduct affirmed this document to be his valid will. Brooks surely never gave to Jacobs this document with his own signature forged thereon. From the contents of the document it is a reasonable inference that he knew of the statutory requirement of witnesses and believed that this had been complied with. Two tribunals at separate hearings have decided this is a valid will. We are of the opinion that the evidence is sufficient to sustain the will.

The appellants' exceptions are overruled. The case is remitted to the Superior Court for further proceedings following the decision.

*James H. Rickard, John C. Knowles,* for appellants.
*Walling & Walling,* for appellee.