[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an appeal from a decision of the Probate Court of the Town of North Providence entered on January 28, 1993, admitting an instrument dated February 18, 1960, as the last will and testament of Anna C. Rose and appointing Carolyn Kay Cooper ("Respondent") as Administrator, d.b.n.c.t.a. Jurisdiction in this Court is pursuant to G.L. 1956 (1984 Reenactment) §33-23-1. A trial de novo was held on April 25, 1994.
Arthur F. Rose ("Petitioner"), an heir-at-law of the decedent, has alleged that the order of the Probate Court is contrary to the law and evidence and is otherwise illegal and void, and has filed the following Reasons of Appeal: (1) Lack of notice; (2) That the instrument is not the last will and testament of the decedent; (3) That the instrument is not executed according to law; (4) That the execution of the instrument was procured under undue influence and fraud; (5) That the decedent was not competent to execute a will.
FACTS AND TRAVEL
Anna C. Rose, Petitioner's great-aunt, died on July 22, 1962, leaving an instrument written entirely by hand in the following language:
 Feb. 18, 1960
 I Anna C. Rose, town of New Shoreham, state of Rhode Island. At present Westerly, R.I. Being of sound and disposing mind, and memory. And considering the uncertainity (sic) of life. Do give exclusivly (sic) all my possessions, whether real or personal to my niece Anna Belle Cooper and her husband Wm. Lewis Cooper Sr. In return for their care and protection to me until the end of life.
 Anna C. Rose Wittness (sic)
 Ruth T. Littlefield 22-March 1960 John Littlefield 22-March 1960
At the time of her death, Anna Rose's only known property was a joint savings account holding about $9,000, in her name and those of Anna Belle Cooper and William Lewis Cooper Sr. ("the Coopers"), and about $40 cash. Because there was thought to be no estate to be administered, the above instrument was filed as her will on July 31, 1962.
Sometime in 1983 William L. Cooper Sr., father-in-law of Carolyn Kay Cooper, discovered that the decedent owned a substantial amount of real estate on Block Island at the time of her death, necessitating the probating of the purported will. On November 18, 1985 the instrument was admitted to probate. William L. Cooper Sr. was appointed administrator and, as sole surviving beneficiary, received all the Block Island real estate.
In August, 1987, Arthur F. Rose learned of the probate proceedings and filed a Miscellaneous Petition in the Probate Court to vacate the prior order and to reopen the matter for a hearing on the merits. He claimed that he had not received notice of the proceedings. His request was denied by the Probate Court, a determination that was affirmed by the Superior Court. On April 17, 1991, the Supreme Court reversed the lower court's decision and remanded the matter to Superior Court with an order to remand to Probate Court.
William L. Cooper Sr. died on May 29, 1991. His daughter-in-law, Carolyn Kay Cooper, succeeded him as administrator of the estate, since his son, William L. Cooper Jr., had predeceased him.
In October, 1992, Arthur Rose filed a Miscellaneous Petition with the North Providence Probate Court alleging that Ms. Cooper had failed to seek assignment of the case for admission of the purported will, although 19 months had passed since the Supreme Court order. He also asked the court to appoint him administrator and sought an order directing Ms. Cooper to show cause why the petition for admission of the instrument as the will of Anna Rose should not be denied and dismissed.
Probate Court denied the request to appoint Petitioner as administrator, but it did assign a date for the hearing on the admission of the instrument as the last will and testament of the decedent. Pursuant to that hearing, an order dated Jan. 28, 1993 admitted the instrument to probate. The instant appeal followed.
APPELLATE REVIEW OF A PROBATE COURT DECISION
The Superior Court review of a Probate Court decision is governed by § 33-23-1 which provides in pertinent part as follows:
 Any person aggrieved by an order or decree of a court of probate may, unless provisions be made to the contrary, appeal therefrom to the superior court for the county in which such court is established. . .
The Rhode Island Supreme Court has held that in reviewing a decree or order of a Probate Court, the Superior Court is not limited to the mere review of assigned errors of law of the probate judge, but rather is a court of retrial of the case, de novo. In Re Taylor's Estate, 114 R.I. 562, 337 A.2d 236 (1975);Kenyon v. Hart, 38 R.I. 524, 96 A. 529 (1916).
NOTICE
Petitioner initially contends that the Jan. 28, 1993 order of the Probate Court should be reversed and declared a nullity because the court lacked jurisdiction due to the fact that all heirs-at-law had not been notified. Petitioner also asserts that notice of the instant proceedings was insufficient.
General Laws 1956 (1984 Reenactment) § 33-22-3 requires that notice of Probate Court proceedings be sent to those listed on the petition for probate as required by § 33-22-2, including known heirs-at-law. However, § 33-22-6 provides that failure to give notice of probate proceedings as required by statute "shall not defeat the jurisdiction of the court . . . and upon discovery thereof the court may make such further orders as the circumstances may require."
§ 33-23-8 requires that notice of probate appeals in Superior Court be published "by advertisement for at least three (3) days in some public newspaper published in this state. . . and shall also issue a citation to the adversary parties who entered an appearance in the probate court. . ."
The record reveals that Petitioner had actual notice of the Probate Court proceedings which were held in response to his Miscellaneous Petition. Furthermore, notice of the instant proceedings satisfied the statutory requirements by publication on three days in the Providence Journal and citation to the adversary parties. Moreover, Petitioner's attempt to take advantage of a failure to notify Lynn Pawley, another heir-at-law (See S. Smith Deposition at 8-9), fails as a basis for his appeal. See Page, The Law of Wills, V.3, § 26.41, p. 92.
UNDUE INFLUENCE, FRAUD
Additionally, Petitioner asserts that the execution of said instrument in writing was procured and obtained under undue influence and fraud. The burden of proving undue influence is always on the party contesting the will. Murphy v. O'Neill,454 A.2d 248, 250 (R.I. 1983). When there is evidence of suspicious circumstances surrounding the drafting of a will, along with an unnatural disposition of the testator's property, the fact finder is justified in drawing an inference of undue influence. But the burden remains with the contestant. Id.
At trial, Petitioner testified that he believed the decedent lived for a time with the Coopers, but that he knew this "only by hearsay." (Tr. at 9). Petitioner also directs the court's attention to the fact that the instrument appears to have been witnessed a month after it was signed by the decedent. While the circumstances surrounding the execution may appear unusual, the second requirement, that the evidence show an unnatural disposition of the decedent's property, has not been met. On the contrary, there is evidence that the Coopers visited the decedent and that she was grateful for their attention (S. Smith Deposition at 16 and 26), while the other heirs-at-law did not have much contact with her. (See M. Smith Deposition at 20 and Tr. at 15).
This court finds that the evidence presented does not justify an inference of undue influence and/or fraud.
TESTAMENTARY CAPACITY
Petitioner further asserts that the decedent was not competent to execute a last will and testament on Feb. 18, 1960. § 33-5-2 provides that "[e]very person of sane mind" may make a will. In Tavernier v. McBurney, 112 R.I. 159, 308 A.2d 518
(1973), our Supreme Court defined "sane mind" as "a mind sufficient to enable a testator to understand what business he is engaged in while he is making a will, also a mind sufficient to enable him to know who the natural objects of his bounty are, his relations to them, what property he has, and the dispositions which he desires to make of it." Id. at 162, 308 A.2d at 520. Whether or not the decedent actually knew of her ownership of the Block Island real estate is not germane to the question of testamentary capacity, as long as it is shown that she had the mental ability to understand her assets. See Id. and Judge v.Janicki, 118 R.I. 378, 382, 374 A.2d 547, 549 (1977).
The burden is on the proponent of the will to show testamentary capacity. McSoley v. McSoley, 91 R.I. 61,161 A.2d 216 (1960). Respondent presented the testimony of Stanley Smith that in 1961, a year after the instrument was signed, the decedent was "mentally capable, competent and could remember and put down things about ancestry, which few people today could probably do." (S. Smith Deposition at 27). Since the opinion of lay witnesses relative to mental capacity is admissible and since no contrary evidence was presented, the Respondent has met her burden. See Id. at 81, 161 A.2d at 226.
TESTAMENTARY INTENT
Petitioner also asserts that the instrument is not the decedent's last will and testament. The proponent of the purported will must prove the presence of both intrinsic and extrinsic elements of a will. Page, The Law of Wills, V.1, sec. 5.1, p. 162. Testamentary intent — the intent that the instrument take effect only upon the death of the testator and pass no interest in property until her death — is an inherent, intrinsic and essential element of a will. Id. The test of testamentary intent in an instrument is "what its legal effect is in view of its intended nature and of the real intention of the maker as deduced from the instrument and from all the facts and circumstances." Id. at sec. 5.6, p. 173 (citing Merrill v.Boal, 47 R.I. 274 (1926)). Our Supreme Court has warned, however, that "when the testamentary intent is ascertainable from within the four corners of the will, resort to extrinsic evidence is unnecessary and improper, and the invocation of rules of construction is uncalled for." Association of Retarded Citizensv. Fogarty Fund, 488 A.2d 1228, 1229 (1985) (citing Edwards v.DeSimone, 105 R.I. 335, 345, 252 A.2d 327, 333 (1969)).
An examination of the instrument purported to be the will of Anna C. Rose reveals that it is written by one "inexperienced in the drafting of wills" and it should, therefore, receive a "sensible interpretation." Weeden Home v. Heirs of Weeden,74 R.I. 22, 23 (1947). A sensible reading of the phrase, "And considering the uncertainity (sic) of life," reveals the necessary testamentary intent. The decedent was not writing about the uncertainties of life such as illness, poverty, etc. She was writing about the uncertainty of life itself. She was writing the instrument at an advanced age with a view toward her death and a desire to provide for those who had provided for her during her life.
Petitioner contends that the establishment of a joint bank account in the names of Ms. Rose and the Coopers at about the time that the instrument was executed shows that Ms. Rose intended only to make an inter vivos gift of the money therein. (See Exhibit D, Schedule C). Our Supreme Court, however, has held that the person seeking to prove that the establishment of a joint bank account was a gift inter vivos must do so by clear and satisfactory evidence that "the donor intended, in praesenti,
to divest himself of the exclusive ownership and control over the subject matter of the alleged a gift and to vest such ownership and control jointly in the claimant." Wyatt v. Moran,81 R.I. 399 (1954). Petitioner has failed in this regard.
Petitioner also would have this court find that, since there is evidence that Ms. Rose probably was unaware of her ownership of the Block Island property (See M. Smith Deposition at 25, 35), she could not possibly have had testamentary intent with respect to that property. The instrument, however, clearly gives all her possessions, "whether real or personal." Our Supreme Court has held that a general devise of real estate is valid and extends to any realty over which the testator has power at the time of death. (See Adams v. D'Hauteville, 72 R.I. 325 (1947). Moreover, Petitioner has presented no conclusive evidence that Ms. Rose did not intend to leave whatever real estate she owned at the time of her death to the Coopers. The language of the instrument, while not written with the expertise of a legal practitioner, evidences Ms. Rose's clear intent to give all that she possessed to the Coopers upon her death.
PROPER EXECUTION AND PROOF THEREOF
Petitioner further alleges that the instrument lacks a will's necessary extrinsic element: execution in accordance with the law. The right to make a will is purely statutory. Hazard v.Bliss, 43 R.I. 431 (1921). § 33-5-5 states in pertinent part:
 No will shall be valid . . . unless it shall be in writing and executed in manner hereafter prescribed; that is to say, it shall be signed by the testator, or by some other person for him in his presence and by his express direction; and such signature shall be made or acknowledged by the testator in the presence of two (2) or more witnesses present at the same time, and such witnesses shall attest and shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary, and no other publication shall be necessary.
"The burden of proving that a will was executed in compliance with law rests upon the parties who propound such will for probate; and they are bound to prove each fact which is necessary to make the will valid." Page, The Law of Wills, V.3, sec. 29.16, p. 435. "The will itself, no matter what recitals it contains, can never establish the truth of such facts." Id.,
V.3, sec. 29.18, p. 440.
The two people whose names are on the instrument as witnesses are unavailable to testify. John Littlefield is dead, and Ruth Littlefield, according to an affidavit of Sidney D. Harvey, M.D. is one hundred years old, mentally incompetent, and physically incapable of testifying in court or by deposition. (Exhibit A).
There are two provisions in our law that address the matter of proving a will when the subscribing witnesses are absent. §33-7-26 allows the admission of an affidavit by the subscribing witness, but only where there are no objectors to probate. In the instant case, therefore, the affidavits of Ruth Littlefield cannot be admitted for the purpose of proving the purported will.
The second statutory provision, § 33-7-10, reads in pertinent part:
. . . [W]henever it shall appear to the superior court, before which a petition for probate of a will is pending on appeal, that a will cannot be proven as otherwise provided by law because one or more of all the subscribing witnesses to the will . . . are dead or mentally or physically incapable of testifying or otherwise are unavailable . . . the court may admit the will to probate upon the testimony in person or by deposition of at least two (2) credible disinterested witnesses that the signature to the will is in the handwriting of the person whose will it purports to be, or upon other sufficient proof of such handwriting. The foregoing provision shall not preclude the court, in its discretion, from requiring in addition, the testimony in person or by deposition of any available subscribing witness, or proof of such other important facts and circumstances as the court may deem necessary to admit the will to probate.
In the instant case, no one has testified in person or by deposition that the signature on the will is in the handwriting of the decedent. Even if Stanley Smith's testimony relative to the decedent's handwriting (S. Smith Deposition at 22) had not been stricken from the record (Tr. at 33-34), the court would still be one witness shy of the necessary proof.
Respondent relies on Christopher Fry's Will, 2 R.I. 88
(1852) for the proposition that, when the subscribing witnesses are unavailable to testify, the court may rely on secondary evidence in reaching its decision. The court held that proof of the signatures of the subscribing witnesses gives rise to a presumption that the instrument was executed properly. Id. at 93. The affidavit of Ruth Littlefield, although not admissible for the purpose of proving the will itself, may be admitted for the limited purpose of proving her and her husband's signatures, thereby giving rise to the Fry presumption.
Petitioner argues that the presumption is overcome by other secondary evidence: the fact that a month had elapsed between the date the instrument was written and the date it was witnessed, and the possibility that the instrument was actually written in Westerly. There is no provision in our law, however, that requires an instrument to be written and witnessed on the same day and in the same place. In fact § 35-5-5 addresses instances in which the instrument is signed out of the presence of the witnesses by allowing the testator to acknowledge her signature to the witnesses.
It is a longstanding principle in this jurisdiction that the court, as fact finder, may consider secondary evidence when the testimony of subscribing witnesses is non-existent, unreliable or even contradictory. Maynard v. Jacobs, 49 R.I. 224 (1928);Newell v. White, 29 R.I. 343 (1908); Sprague v. Luther,8 R.I. 252 (1865). The question of proper execution is a matter to be decided "in view of all the legitimate evidence in the case."Newell, 29 R.I. at 349. "Instead of its being shown by the attestation clause that there was a compliance with the statute, the court or jury . . . is to be reasonably satisfied of the fact of a proper attestation from other sources and the circumstances of the case." Maynard, 49 R.I. at 229.
Before this Court is an instrument written by a non-lawyer who, aware of the uncertainty of life, gives "all (her) possessions, whether real or personal," to the people who, according to the evidence on the record, saw to her needs until her death and even thereafter. (See S. Smith Deposition at 16, 26). There is no secondary evidence which would lead this court to find that the presumption of proper execution is successfully rebutted.
CONCLUSION
After de novo review, this Court finds that the instrument has both the intrinsic and extrinsic characteristics required for its admission to probate as the last will and testament of Anna C. Rose. Accordingly, the appeal of Petitioner Arthur F. Rose is denied and the January 28, 1993 order of the Probate Court of the Town of North Providence is hereby affirmed. Counsel shall submit the appropriate judgment for entry.