KATHARINE E. O'HEARN, JUNIOR, *vs.* WILLIAM WALL O'HEARN & another
(and a companion case[1]).

Suffolk. February 6, 7, 1951. — March 29, 1951.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Undue Influence.*

Conflicting evidence of the circumstances in which an aged woman, shortly before her death, conveyed property to her daughter and at about the same time made a will giving the residue to the daughter, who had unfriendly relations with two other children having friendly relations with the mother, did not show to be plainly wrong findings by a judge of probate that the conveyance and the will were procured by undue influence exerted on the mother by the daughter.

PETITION, filed in the Probate Court for the county of Suffolk on August 5, 1947, for proof of the will of Katharine E. O'Hearn, late of Boston; also a

PETITION IN EQUITY, filed in the same court on August 19, 1947.

The cases were heard by *Wilson,* J.

*J. C. Johnston,* (*L. C. Levine* with him,) for Katharine E. O'Hearn, Junior.

*W. W. O'Hearn,* pro se and for Mary M. O'Hearn.

LUMMUS, J. Katharine E. O'Hearn, hereinafter called the mother, died on August 2, 1947, at the age of nearly

---

[1] The companion case is by Mary M. O'Hearn and another against Katharine E. O'Hearn, Junior.

eighty-eight years, leaving three children, Mary M. O'Hearn, William W. O'Hearn, and Katharine E. O'Hearn, Junior, hereinafter called Katharine.

The principal case is the petition of Katharine for proof of the mother's alleged will, executed on May 22, 1947. On June 30, 1949, the Probate Court entered a decree that said purported will was procured by the undue influence of Katharine and that it be disallowed. Katharine appealed. The instrument disallowed gave one bank deposit to Mary, which stood in the name of the mother as trustee for Mary, and another to William which stood in the name of the mother as trustee for William, and all the residue to Katharine.

The companion case is a petition filed in the Probate Court on August 19, 1947, by Mary and William, alleging that the mother conveyed almost all of her property to Katharine and gave Katharine a power of attorney, dated May 22, 1947, because of undue influence exercised upon her by Katharine, by means of which power of attorney Katharine transferred to herself stocks, bonds and other personalty as well as real estate. On June 30, 1949, a decree was entered setting aside certain conveyances from the mother personally or by attorney to Katharine in or after May, 1947, because of the undue influence of Katharine, and ordering a reconveyance to each of the petitioners of one third of the real estate so conveyed, and a reconveyance to the legal representatives of the mother's estate of the personalty so conveyed. Katharine appealed.

Both cases were heard together. No findings of material facts were filed, but the evidence is reported. The sole issue argued is whether the judge erred in finding undue influence on the part of Katharine. To enable us to reverse the decrees, the evidence must convince us that the judge was plainly wrong. *Trade Mutual Liability Ins. Co.* v. *Peters,* 291 Mass. 79, 83–84. *Murphy* v. *Donovan,* 295 Mass. 311, 315. *Old Colony Trust Co.* v. *Yonge,* 302 Mass. 49, 50. *Hercules Powder Co.* v. *Commissioner of Public Health,* 325 Mass. 599, 600.

The evidence warranted a finding of the following facts. Katharine was fifty-two years old at the time of the hearing. Mary was two years older. William was three years younger. All lived with the mother, except that William, who is a lawyer, was in the army from 1941 until 1947. Katharine was a pharmacist for the Commonwealth, until she ceased to work at the end of 1944 and devoted her time to the mother. Mary, with a long record of education, is a teacher in the Boston public schools.

For many years the relations between Mary and William, on the one hand, and Katharine, on the other, have been unfriendly. But the relations between the mother, and Mary and William, were friendly and cordial. A change for the worse appeared in Katharine's disposition about 1941. She became loud, argumentative and dictatorial. On many occasions Katharine screamed at the mother. In June, 1947, Katharine said that "all this time Ma has been ill I have been telling her what I want her to do over and over" until she does "what I want her to do." From June, 1947, Katharine admitted slapping and pinching the mother to compel her to do as Katharine wished. After the mother died, Katharine boasted to Mary and William, "You can both get out of this house; I have been one jump ahead of you since April 16th [the date when the mother's illness became acute] . . . I have been one jump ahead of you both for years and there is nothing you can do about it." The manager of a bank where the mother did business testified that in March, 1947, when he was at the mother's house, the mother told him in the absence of Katharine that Katharine was pressing her to have her securities transferred into Katharine's name, and that she did not want to do it. On May 21, 1947, Katharine told him that she had accomplished the transfer through a lawyer named Finkelstein. She had recently met Mr. Finkelstein, and he was the lawyer who drew the will and attended to its execution.

There was, it is true, evidence that would support a finding that the alleged will and the conveyances and power of attorney were made without undue influence on the part of

Katharine. But on the conflicting evidence, the judge found that they were "procured by the dominance and undue influence of the respondent [Katharine] exercised on deceased, in pursuance of a plan to gain control of the deceased's estate, while the latter was enfeebled by age and disease and unable to exercise independent judgment." As to the alleged will, the judge found that "the execution of said instrument having been procured through undue influence exercised by" Katharine, "said instrument is not the last will and testament of said deceased."

The nature of the undue influence that will invalidate a will or a transfer inter vivos is explained in *Neill* v. *Brackett*, 234 Mass. 367, *S. C.* 241 Mass. 534. As to either sort of instrument, the nature and effect of undue influence is the same. *Costello* v. *Hayes*, 249 Mass. 349, 355. On the evidence in this case, as in *Campbell* v. *Lima*, 212 Mass. 11, 13, "the case was one which had two sides to it," and "whichever way the judge who heard it decided it, it could not be said that his decision was plainly wrong."

In each case, the entry will be

*Decree affirmed.*