Louis W. Morin *vs.* Alfred Morin & others.

Worcester. September 24, 1951. — November 2, 1951.

Present: Qua, C.J., Ronan, Wilkins, Spalding, & Williams, JJ.

*Probate Court,* Jury issues. *Will,* Validity, Execution. *Unsound Mind. Undue Influence.*

Upon a contest of a purported will, it was error to frame a jury issue as to due execution where statements of expected evidence did not indicate noncompliance with the formal requirements of G. L. (Ter. Ed.) c. 191, § 1, and the statement of expected evidence by counsel for the contestant contained nothing disproving a statement in behalf of the proponent that the will was read to the alleged testator and that he understood he was executing his will, even if other expected evidence relative to unsoundness of mind and undue influence were considered.

Statements of expected evidence in a contested will case indicated mental impairment of the alleged testator when he executed the purported will at about seventy-nine years of age while suffering from heart and other diseases and while under the care of a physician who would testify that he "had deficiencies in his memory and at times was not right mentally," and there was no error in the framing of a jury issue as to soundness of mind.

There was no error in a contested will case in framing a jury issue as to whether the purported will was procured to be made by undue influence of one of the alleged testator's sons where statements of expected evidence indicated that it was executed when the alleged testator was of advanced age, feeble health and impaired mentality, that it gave substantially all of his property to the son in disregard of the strong moral claims of his other six children to equal treatment, that he gave the son control of the property by a power of attorney, that both documents were executed in the son's office after being drafted by the son's attorney, that the son was of a domineering type, and that the alleged testator feared and hated him.

Petition, filed in the Probate Court for the county of Worcester on March 1, 1950, for proof of the will of Charles Morin, late of Fitchburg.

A motion for jury issues was heard by *Rice,* J.

· *P. J. Murphy,* (*L. C. M. DesChenes* with him,) for the petitioner.

*H. G. Bowen,* for the respondents.

RONAN, J.   On motion of the respondents, who are contesting the probate of an instrument dated September 2, 1949, purporting to be the will of Charles Morin, late of Fitchburg, the judge framed the following issues for trial by jury:   (1) "Was the instrument now propounded for probate as the last will of Charles Morin, late of Fitchburg, in said county of Worcester, deceased, executed according to law?"   (2) "Was said Charles Morin of sound mind at the time of the execution of the instrument which is propounded as his last will?"   (3) "Was the instrument propounded for probate as the last will of said Charles Morin procured to be made by the fraud or undue influence of Louis W. Morin or any of them[1] [*sic*] exercised upon the said Charles Morin?"   The case was heard in the Probate Court upon the statements of counsel for the respective parties as to the evidence they intended to produce at the trial.   The petitioner appealed from the order framing the issues.

The governing principles of law in determining whether a motion for issues should be granted have been frequently stated.   The motion should not be granted unless it appears that there is a real question of fact supported by evidence of such substantial nature as to afford ground for a reasonable expectation of a result favorable to the party requesting the allowance of the motion.   Although the record contains everything which the probate judge had before him, yet, there being vested in him an element of discretion, his decision will upon appeal be given the weight to which it appears to be entitled.   *Hannon* v. *Gorman,* 296 Mass. 437.   *Flynn* v. *Prindeville,* 327 Mass. 266.

The first issue presented the question whether the instrument was executed according to law.   The burden of prov-

---

[1] The words "or any of them" were improperly inserted in this issue. There was no expected evidence that anyone other than Louis Morin was charged with exercising undue influence.

ing it was so executed rested upon the proponent and required him to prove that all the formal requirements of the statute were complied with (G. L. [Ter. Ed.] c. 191, § 1) and also that the decedent executed it with knowledge of the contents and with the intention that it should be his last will and testament. *Barker* v. *Comins,* 110 Mass. 477, 487. *Richardson* v. *Richards,* 226 Mass. 240, 245. *Fuller* v. *Sylvia,* 240 Mass. 49, 54. *Hogan* v. *Whittemore,* 278 Mass. 573. There is nothing in the statements of expected proof indicating any failure to observe the statutory method prescribed for the formal execution of a will. There is nothing in the statement in behalf of the contestants specifically directed to disproving the statement in behalf of the proponent in substance that this short and simple instrument was read to the decedent and that he understood that he was executing his will. If we consider, in this respect, all the other expected evidence relative to unsoundness of mind and undue influence, we are of opinion that it does not go far enough to justify the framing of an issue as to execution. See *Smith* v. *Brewster,* 247 Mass. 395, 398–399; *Simoneau* v. *O'Brien,* 311 Mass. 68, 74–75.

The decedent was seventy-nine years of age at the time of his death on February 14, 1950. In the spring of 1949 he was suffering from heart disease, hardening of the arteries, diabetes, and cancer of the lip for which he underwent an operation at a hospital in which he was confined from April 7, 1949, to May 14, 1949. He returned to the hospital on May 20, 1949, from which he was discharged on June 22, 1949. The hospital record covering this second visit shows that at times he had to be restrained and that he did not seem to realize what he was doing or where he was going. Two physicians who in June, 1949, treated him in the hospital during this visit will testify that he was not in any condition to make a will. He was under opiates at the hospital, and was sometimes irrational. He would wander in his talk and at times he did not recognize his children. After he left the hospital his condition grew gradually worse. His own physician, who attended him after he left

the hospital, will testify that "he had deficiencies in his memory and at times was not right mentally." He seldom joined in any conversation but he usually played with his hands or with a string. At times he fell asleep while smoking and caused two or three fires. On one occasion he strayed from his daughter's home and was found in the cellar of Louis's house. He did not know where he was or how he got there. We need not describe further details indicating mental impairment about the time the alleged will was executed on September 2, 1949. Enough appears to show that there was no error in framing the second issue dealing with the testamentary capacity of the decedent. *Briggs* v. *Weston*, 294 Mass. 452. *Goddard* v. *Dupree*, 322 Mass. 247. *Santry* v. *France*, 327 Mass. 174.

There was no error in framing the third issue. Louis made an appointment with his own attorney to meet the decedent at the office of Louis where the attorney, after conferring with the decedent, typewrote the instrument and then had it executed. He also drafted a power of attorney running to Louis from his father which the latter executed. The decedent had never been to school and was unable to sign his name. Both instruments were executed by a cross. Although there was no evidence to indicate that the relations between the decedent and his children, other than Louis, were strained or unfriendly or that the natural relations of affection did not exist between them, the will gave the bulk of his estate to Louis and a legacy of only $1 to each of his other children. He lived with his daughter Laura from 1948 up to six days prior to his death in a convalescent home, with the exception of two months when he lived with one of the sons. She was kind and attentive to him. He was not always confined indoors while living at her home after he left the hospital, but he required considerable care for which she never received any compensation. Louis never stated until after his father's death that the decedent had made a will, and before his father's death Louis denied that he, Louis, had any authority to collect the rents. There was other expected evidence that Louis was of a domineer-

ing type; that his father feared and hated him. Statements were also attributed to the father, alleged to have been made to one of the children shortly before his death, that she had better watch Louis as he would try to get all of his father's property.

The statements of expected evidence that the instrument was executed by one of advanced age and feeble health, bequeathing and devising to his son substantially all of his property and giving the same child by means of a power of attorney the control of his property, and that this son, whom he feared and hated, was selected as his chief beneficiary, disregarding the strong moral claims of his other six children to equal treatment, are enough to warrant framing an issue as to the undue influence of Louis Morin. *Smith* v. *Patterson*, 286 Mass. 356. *Crosby* v. *Tracy*, 290 Mass. 46. *Mirick* v. *Phelps*, 297 Mass. 250. *Viens* v. *Viens*, 302 Mass. 366. *O'Hearn* v. *O'Hearn*, 327 Mass. 242.

It follows that the order of the Probate Court must be reversed to the extent that it frames an issue as to due execution and must be affirmed to the extent that it frames an issue relating to the soundness of mind, and another relating to undue influence after changing its form by striking out the words "or any of them."

*So ordered.*