LOLA M. ROGINSKA *vs.* GAETANO SILVERIO & another.

Norfolk.   December 2, 1952. — January 8, 1953.

Present: QUA, C.J., LUMMUS, RONAN, WILLIAMS, & COUNIHAN, JJ.

*Probate Court,* Jury issues.   *Undue Influence.   Unsound Mind.*

Expected evidence in a contested will case showing merely abuse of a woman by her second husband and fear of him on her part was insufficient to show the actual exercise of undue influence by him in connection with her will leaving him all her property to the exclusion of her children by her first marriage.

The denial of a motion for a jury issue as to soundness of mind in a contested will case was not error on a statement for the contestants of expected evidence showing inability of the decedent, because of a shock and coma, to understand the nature of her act in executing the will on the day before her death, and a statement for the proponent of expected evidence from the decedent's physician and attorney and others showing that at the time of the execution of the will she was not comatose but was bright and alert and knew what she was doing.

PETITION, filed in the Probate Court for the county of Norfolk on May 15, 1951, for proof of the will of Anita D'Amore, late of Brookline.

A motion for jury issues was heard by *Hickey,* J.

*Stanley H. Rudman,* for the contestants.

*Harry J. Williams,* (*Patrick F. Murphy* with him,) for the petitioner.

WILLIAMS, J. This is an appeal from an order denying a motion by those contesting the probate of the will of one Anita D'Amore to frame the following issues to a jury. "1. Was the instrument purporting to be the last will of said Anita D'Amore dated April 16, 1951, executed according to law?   2. Was the said Anita D'Amore at the time

of the execution of the said alleged will of sound mind? 3. Was the execution of said alleged will of said Anita D'Amore, procured by the fraud or undue influence of Nicola D'Amore, Gaetano D'Amore, Eugene D'Amore or any of them, exercised upon the said Anita D'Amore?'' The contestants are two of the decedent's children. Anita D'Amore died on April 17, 1951. Her heirs are Nicola D'Amore, her husband by a second marriage, and five children by her first marriage. In her will which was executed on the day before she died she left all of her property to her husband. All of the heirs except a son, John Silverio, who is one of the contestants, assented in writing to the allowance of the will. Although having so assented another son, Gaetano Silverio, later joined John as a contestant.

The motion was heard on·statements by counsel of the evidence expected to be produced and a copy of the death certificate. Counsel for the contestants stated that he expected to prove the following. Five days before her death the decedent suffered a shock with resulting paralysis on one side. Thereafter, ''she was more or less in a state of semicoma.'' She ''was totally helpless, and had to be washed, fed, and turned over in bed, and generally cared for.'' On ''Sunday, two days prior to her death, she lapsed into a total coma, and then, thereafter, was unable to communicate with any one.'' On April 16 she ''could not read or understand what was read to her, and was incapable of understanding that she was executing a will. She didn't recognize any one of the witnesses.'' On various specified occasions she had been abused by her husband and was in fear of him.

Counsel for the proponent stated that his evidence would show that the decedent was not in a state of coma or semicoma before her death. She was bright, alert, and knew what she was doing. The will was executed in the morning at a time when she was ''entertaining some friends.'' She ''excused herself and discussed the contents of the will with

her attorney, and then requested the people to sign as witnesses." After executing the will she signed a check for her attorney in payment for services. Her relations with her husband were "harmonious" and the disposition of her property was that which "many times" she had told her attorney she intended to make. The property had originally been put in her name by her husband who was somewhat older than she and expected to predecease her.

The death certificate disclosed that the "disease or condition directly leading to death" was myocarditis which had been present for one year. The "antecedent cause" of death was embolism with hemiplegia the "onset" of which was five days before death. The family physician was not called as a witness although opportunity was afforded by the judge for his production. It was stated by counsel for the proponent that he would testify that on Sunday, April 15, "the patient had developed headaches, dizziness, and weakness of the right side. When he examined her, he found that her mind was clear; she described her symptoms to him clearly; she was not in a coma or a semicomatose condition. Examination revealed a slight right side hemiplegia; and the diagnosis at that time was either [*sic*] a cerebral thrombosis secondary to hemorrhage. He did not take the condition too seriously. He prescribed that she stay in bed, with ice bags on her head; gave her medication, and told her that he would return the following Wednesday."

"The governing principles of law in determining whether a motion for issues should be granted have been frequently stated. The motion should not be granted unless it appears that there is a real question of fact supported by evidence of such substantial nature as to afford ground for a reasonable expectation of a result favorable to the party requesting the allowance of the motion. Although the record contains everything which the probate judge had before him, yet, there being vested in him an element of discretion, his decision will upon appeal be given the weight to which it appears to be entitled." *Morin* v. *Morin,* 328 Mass. 33, 34. *Fuller* v. *Sylvia,* 240 Mass. 49. *Cook* v. *Mosher,* 243

Mass. 149, 152–153. *Hannon* v. *Gorman,* 296 Mass. 437, 438.

There is nothing in the stated evidence to warrant the framing of an issue respecting the exercise of undue influence by Nicola D'Amore, Gaetano D'Amore or Eugene D'Amore. We assume that, as to the two last named, the intended reference is to the sons, Gaetano Silverio and Eugene Silverio. The motion apparently was drawn by counsel before Gaetano joined John Silverio as a contestant. There is no stated evidence tending to show fraud or the exercise of undue influence by either Gaetano or Eugene. The evidence of the physical abuse by Nicola, the husband, and the fear of him on the part of the decedent, while perhaps ground for suspicion and conjecture, is not sufficient to show the actual exercise of undue influence. *Flynn* v. *Prindeville,* 327 Mass. 266, 269.

The principal contention of the contestants is that the decedent was not of sound mind when she signed her will which appears to have been executed according to law. If in fact she was in a "total coma" and did not understand the nature of her act the will would be invalid. It was for the judge to determine whether the expected evidence of the contestants was of such a character that, considered with the expected evidence of the proponent, it would be likely to cause a jury to decide in their favor. In view of the testimony to be offered presumably by the physician, the attorney, and the friends present at the execution of the will, he could fairly conclude that there was no reasonable expectation of such result. Giving to his decision the weight to which it is entitled we think that there was no error in denying the motion.

*Order denying jury issues affirmed.*